

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

12-11-2001

# Herr v. Pequea Twp

Precedential or Non-Precedential:

Docket 00-2473

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation
"Herr v. Pequea Twp" (2001). *2001 Decisions.* Paper 287.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/287

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 11, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 00-2473

E. MARVIN HERR, INDIVIDUALLY AND T/A MILLWOOD
PARK ASSOCIATES

v.

PEQUEA TOWNSHIP; VIRGINIA K. BRADY, INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY; BRUCE G. GROFF,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY;
MARTIN P. HUGHES, INDIVIDUALLY AND IN HIS
OFFICIAL CAPACITY

E. Marvin Herr, Appellant

On Appeal From the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 99-cv-00199)
District Judge: Honorable Franklin S. VanAntwerpen

Argued May 14, 2001

BEFORE: SCIRICA, GARTH and STAPLETON,
Circuit Judges

(Opinion Filed: December 11, 2001)

        Edward M. Posner (Argued)
        Jeffrey P. Wallack
        Drinker, Biddle & Reath
        18th and Cherry Streets
        One Logan Square
        Philadelphia, PA 19103
         Attorneys for Appellant

          Kevin J. O'Brien (Argued)
          Marks, O'Neil, O'Brien & Courtney
          1880 JFK Boulevard, Suite 1200
          Philadelphia, PA 19103
           Attorney for Appellees

OPINION OF THE COURT

STAPLETON, Circuit Judge:

E. Marvin Herr, a land developer, appeals the grant of
summary judgment to Pequea Township ("Township") and
its three supervisors, Virginia Brady, Bruce Groff, and
Martin Hughes (collectively, "defendants"), in this civil
rights action. Herr alleges that his right to substantive due
process was violated by an eleven year campaign of the
Township and its officers to delay and obstruct his
development of an industrial park.

The defendants adopted a land use plan and a sewer
facilities plan based in part on their view that industrial
development within the Township should be restricted.
Over the next eleven years, Herr, who wished to construct
an industrial park and who had applied to the Lancaster
County Planning Commission ("LCPC") for approval of a
subdivision plan prior to the effective date of these plans,
sought the necessary authorization for his development
from the LCPC, the Department of Environmental Review
("DER"), the Environmental Hearing Board ("EHB"), the
Zoning Hearing Board ("ZHB"), and the courts. The
Township participated in the proceedings before each of
these bodies. While it acknowledged that Herr's project was
grandfathered under the prior land use plan if he
completed it within five years, the Township insisted that
he had no vested right to municipal sewer services under
the prior sewer facilities plan and argued that the
Township's new plan should be enforced. After Herr
secured an order from the DER directing the Township to
amend its sewer facilities plan so as to provide municipal
sewer service to his property and obtained a land use
permit from the LCPC, the Township took the position in
further proceedings that not all conditions of the LCPC's

2

approval had been fulfilled and that the five year grandfathering had expired before completion of the project. Ultimately, Herr secured the necessary authority to go forward with his industrial park.

Herr claims that the defendants' conduct with respect to his proposed development was motivated throughout by a strong desire to preserve agricultural land and restrain development in the Township. In support of this claim, he has tendered evidence tending to show that the individual defendants had run for office on "anti-development" platforms and that their adoption of a new zoning ordinance and sewer facilities plan was intended to make it more difficult for developers to secure approvals of their projects. Herr stresses, for example, that the new zoning ordinance reduced the land zoned industrial by 68 percent.

While Herr points to the defendants' adoption of the new zoning ordinance and sewer plan as evidence of their "anti-development bias," we do not understand him to contend that the defendants' actions with respect to those plans violated his right to substantive due process. Decisions on whether to adopt or amend zoning ordinances and municipal services plans are legislative ones that must survive due process review unless "the governmental body could have had no legitimate reason for its decisions." Pace Resources, Inc. v. Shrewsbury Township, 808 F.2d 1023, 1034 (3d Cir. 1987). The desire to limit development is such a legitimate reason. Id.

Rather, Herr claims that the defendants conspired to prevent him from securing the necessary approvals from other government agencies, or to delay the receipt of those approvals until his project would no longer be grandfathered under the prior ordinance. In support of this contention, he submitted what he regards as a "smoking gun" letter from Dr. Alan Peterson, the Chairman of the Pequea Township Environmental Advisory Council, to the Township's legal counsel dated February 19, 1994. That letter states in part:

> Only Virginia Brady and I in the township know the following: (Do not state this back to the township in any manner). The owner must sell the lots, then all

3

land development plans must be approved by 10/94 or they become nonconforming lots in the Ag. District. Obviously the longer we can stall (if we can't win this with the [Department of Environmental Review]), the better.

App. at 374–75.

According to Herr, the defendants' conspiracy consisted of (1) resisting before the LCPC, the DER, the Board, and the courts Herr's efforts to secure the right to proceed; (2) instructing its own personnel to carefully scrutinize Herr's proposal in order to identify any possible problems; and (3) communicating with the LCPC, the DER, the State Fish Commission, the State Game Commission, and other governmental agencies voicing various concerns about the proposed project.

Herr relies on a line of our cases which hold that a township or other agency acting under color of state law denies a landowner substantive due process if it denies or delays action on his permit application for reasons unrelated to the merits of the application. See Woodwind Estates, Ltd. v. Gretkowski, 205 F.3d 118, 124–25 (3d Cir. 2000) (holding that delay of permitting process because of community resistance to proposed low income housing project provided jury with a basis from which it could reasonably find that decision maker acted in bad faith or due to an improper motive violating developer's substantive due process rights); DeBlasio v. Zoning Bd. of Adjustment, 53 F.3d 592, 601–02 (3d Cir. 1995) (holding that denial of permit based on decision maker's personal financial interest, if proven, establishes a violation of the right to be free from arbitrary and capricious government action); Blanche Rd. Corp. v. Bensalem Township, 57 F.3d 253, 267–68 (3d Cir. 1995) (holding that conspiracy to delay permits for industrial park for political reasons unrelated to the merits of an application is sufficient to establish a substantive due process violation); Parkway Garage, Inc. v. City of Philadelphia, 5 F.3d 685, 696–97 (3d Cir. 1993) (holding that the jury could reasonably infer improper motive when lease was allegedly terminated based upon decision maker's economic interest); Bello v. Walker, 840 F.2d 1124, 1129-30 (3d Cir. 1988) (holding that a

4

municipal corporation's denial of a building permit for partisan political or personal reasons unrelated to the merits of the case, if proven, establishes a substantive due process violation). Herr correctly points out that, while the ultimate issue before the LCPC and the other governmental bodies was whether to permit a new industrial park, resolution of that issue properly turned on whether his development met the criteria established by law. The defendants' opposition, according to Herr, was motivated by a determination to stop his development without regard to whether it met those criteria.

Unlike the defendants in the cases cited by Herr, however, the Township and its supervisors were not authorized to issue permits for Herr's industrial park. The LCPC alone had that authority. Herr's claim is thus not that the defendants subverted a decision making process by taking irrelevant considerations into account. It is rather that the defendants contested issues before the bodies authorized to resolve various permitting issues because they wished to defeat or delay the approval of Herr's project by those bodies. This claim is materially different from the claims asserted in Bello and its progeny.

We conclude that there is evidence from which a trier of fact could conclude that the Township's challenged conduct was motivated by a desire to stop Herr's development. At the same time, we conclude that there is no evidence from which a trier of fact could conclude that the Township took frivolous positions or otherwise unreasonably delayed the proceedings before the various state bodies. We hold that where a township participates in proceedings before other governmental agencies authorized to resolve issues like those here presented, the township and its supervisors are not subject to liability for delay occasioned by those proceedings solely because their participation was motivated by a desire to delay or prevent the project for which approval is sought.1

_____

1. The dissent correctly notes that the Township and its supervisors have asked us to affirm the judgment of the District Court on the ground that the evidence presents no material dispute of fact as to whether they had an improper motive. If Bello and its progeny were the controlling

5

I.

Herr sought to develop approximately 45 acres of land that he owns in Pequea Township, Lancaster County, Pennsylvania. By October 9, 1989, he learned of a proposed land use plan under which the zoning of his land would be changed so as to permit only agricultural use. On December 5, 1989, Herr submitted to the LCPC a subdivision plan to construct an industrial park on this property ("Millwood Industrial Park" or "Millwood"). At the time he submitted this plan, his property was zoned industrial, and the existing sewage facilities plan ("the 1971 sewage facilities plan") was a county-wide plan providing public sewers pursuant to the Pennsylvania Sewage Facilities Act ("Act 537"). The LCPC considered and rejected the industrial park plan twice, and Herr resubmitted it twice. Ultimately, the LCPC granted preliminary conditional approval on October 9, 1990, and preliminary unconditional approval on February 25, 1991.

After Herr's subdivision plan was filed but several months before the LCPC approvals, Pequea Township, on August 22, 1990, adopted a new Township map to conform with Lancaster County's comprehensive plan. On the new map, the land where Herr's proposed industrial park was to be situated was rezoned from industrial to agricultural. Under Pennsylvania law, Herr was allowed five years from the date of the preliminary approval to complete his non-conforming development.[2] Following adoption of the new zoning, the Township began to revise its sewage facilities

_____

authority here and motive were the legally relevant issue, we would find ourselves hard pressed to uphold the District Court's judgment. However, "when the judgment of a district court is [legally] correct, it may be affirmed for reasons not given by the Court and not advanced to it." Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1085 (5th Cir. 1988) (quoting Laird v. Shell Oil Co., 770 F.2d 508, 511 (5th Cir. 1985)); Elliott Coal Mining Co.
v. Director, 17 F.3d 616, 628 n. 16 (3d Cir. 1994).

2. Under Pennsylvania law, once a development proposal is submitted, the zoning regulations in place are not subject to change (with respect to that proposal) for five years after the preliminary proposal is approved. See 53 Pa. C.S.A. S 10508(4)(i).

6

plan to comport with its new land planning scheme. On June 3, 1992, the Township repealed prior sewage plans and adopted a new sewage plan. The new plan provided for the extension of public sewers into areas of the Township designated for development but not into areas designated for agricultural use. Accordingly, the permitted sewage disposal for the area in which Millwood was situated was changed from public sewers to on-lot disposal systems. As required, the Township submitted its sewage facilities plan to the DER for approval under Act 537.

On July 30, 1992, Herr requested that the Township amend its sewage facilities plan so as to provide for municipal sewer service to Millwood. A little over a month later, on September 2, 1992, that request was denied.[3] Herr then filed a "private request" with the DER under 35 Pa. Cons. Stat. Ann. S 750.5 seeking an order requiring the Township to amend its sewage plan as it had been requested to do.[4] At the time of Herr's private request, the

_____

3. Section 71.53 of the DER regulations, as then in effect, provided:

    (f) A municipality may refuse to adopt a proposed revision to their
    official plan for new land development for reasons, including, but
    not limited to:

    (1) The plan is not technically or administratively able to be
    implemented.

    (2) Present and future sewage disposal needs of the area,
    remaining acreage or delineated lots are not adequately addressed.

    (3) The plan is not consistent with municipal land use plans and
    ordinances, subdivision ordinances or other ordinances or plans for
    controlling land use or development.

    (4) The plan is not consistent with the comprehensive sewage
    program of the municipality as contained in the official plan.

    (5) The plan does not meet the consistency requirements of
    S 71.21(a)(5)(i)-(iii).

25 Pa. Code S 71.53(f) (1989).

4. Section 750.5(b), as then in effect, provided:

    Any person who is a resident or property owner in a municipality
    may request the department to order the municipality to revise its

Department was still reviewing the plan that the Township had submitted.

On September 28, 1993, the LCPC gave conditional final approval to a final plan for Millwood that had been submitted on August 3, 1992 ("the August 1992 plan"). The approval was conditioned on Herr's satisfaction of over forty conditions including his securing approval for his proposed sewage disposal. On February 8, 1994, the DER granted Herr's private request and issued an order directing the Township to revise its 1992 sewage plan.

Several years of litigation ensued. On March 25, 1994, the EHB reversed the decision of the DER. In response to this decision, the DER denied Herr's private request on April 4, 1994. Then Herr appealed, first to the EHB and next to the Commonwealth Court. On May 31, 1996, the Commonwealth Court reversed the EHB's decision, found in favor of Herr, and remanded the case for further proceedings. On remand, the EHB ultimately granted summary judgment on the sewage disposal issue. The Township and the DER both filed a petition for reconsideration with the Board, which denied the petition, and then a petition for review with the Commonwealth Court, which, on July 10, 1998, affirmed the Board's decision. Pequea Township v. Herr, 716 A.2d 678, 681 (Pa. Commonw. Ct. 1998).

Throughout the "sewer litigation," the Township maintained that the law specifying the sewer requirements applicable to the Millwood site was the 1992 sewer plan. In support of this view, it took the position that (1) the 1992 plan became effective without DER approval on October 20,

_____

> official plan where said person can show that the official plan is inadequate to meet the resident's or property owner's sewage disposal needs. Such request may only be made after a prior demand upon and refusal by the municipality to so revise its official plan. The request to the department shall contain a description of the area of the municipality in question and an enumeration of all reasons advanced by said person to show the official plan's inadequacy. Such person shall give notice to the municipality of the request to the department.

1992, pursuant to 25 Pa. Code S 71.32(c) (1989),5 and the DER accordingly lacked authority for its original order; and (2) the statute grandfathering for five years developments pending approval at the time of a zoning change did not apply to sewer plans and, accordingly, Herr had no vested right to public sewer service. The Board agreed with the Township that the 1992 plan became effective on October 20, 1992. The Commonwealth Court did not reach the merits of that issue but did agree with the Township that the grandfathering provision for zoning ordinances did not give Herr a right to public sewer services under the 1971 plan. Pequea Township v. Herr, 716 A.2d 678, 684 (Pa. Commonw. Ct. 1998). The Court nevertheless decided in Herr's favor on the ground that, even if a landowner's proposal is inconsistent with the applicable municipal sewer plan, the DER is authorized to require its adoption upon a showing that the provisions of the municipal plan are "inadequate" to meet the needs of the landowner. The Commonwealth Court wrote at some length on each of the six contentions raised by the DER and the Township.

On November 29, 1998, once all the sewage issues were settled, the LCPC determined that Herr met all of the remaining conditions for approval and permitted recordation of the final land development plan. The Township then appealed this decision to the Court of Common Pleas, arguing (1) that Herr failed to meet three of the other conditions imposed by the LCPC when it conditionally approved the August 1992 plan; and (2) that Herr's vested rights to application of the pre-existing zoning ordinance had expired because five years had elapsed since the approval of his preliminary development plan and no valid extension had been granted by the LCPC.

Meanwhile, after recordation, Herr began construction of

_____

5. This section provides:

> Upon the Department's failure to act on a complete official plan or revision within 120 days of its submission, the official plan or official plan revision will be considered approved, unless the Department informs the municipality prior to the end of 120 days that additional time is necessary to complete its review. The additional time may not exceed 60 days.

9

his industrial park. During construction, Herr erected a sign advertising the sale of lots and began excavation. A Township zoning officer issued Herr an enforcement notice because he believed that Herr had violated the Township's 1992 zoning ordinance for excavation without a zoning permit and advertising the sale of the premises without a zoning permit. Herr appealed the enforcement notice to the Zoning Hearing Board ("ZHB"), arguing that the Township's 1980 zoning ordinance applied rather than the 1992 zoning ordinance. The ZHB held that, even if Herr's substantive rights were determined by the earlier zoning ordinance, he must comply with the procedural requirements of the new ordinance, including its permit requirements. Herr appealed to the Court of Common Pleas.

The appeals to the Court of Common Pleas were consolidated. On December 29, 1999, the Court decided in favor of Herr and against the Township. With regard to the issues raised by the Township, the Court held that the LCPC did not abuse its discretion in granting Herr an extension and allowing recordation of his plan. With regard to the issue raised by Herr, the Court found that the 1992 zoning ordinance requiring a permit for excavation and advertising was inapplicable because it was substantive rather than procedural in nature and thus adversely and improperly affected Herr's substantive rights. The Township appealed the Court of Common Pleas decision to the Commonwealth Court, which affirmed on January 10, 2001.

II.

We agree with the District Court that Herr had a property interest in Millwood which was entitled to protection under "the substantive due process element of the Fourteenth Amendment." Herr v. Pequea Township, No. 99-cv-199, at 17 (E.D. Pa. filed July 31, 2000). See Blanche Road, 57 F.3d at 268 n.15; DeBlasio, 53 F.3d at 601. We thus turn to the issue of whether Herr was deprived of that property interest in violation of substantive due process.

III.

With possible exceptions hereafter addressed in section IV, the injuries for which Herr seeks redress arise from the

10

delay occasioned by the proceedings before the LCPC, the DER, the EHB, the ZHB and the courts of Pennsylvania. When recovery is sought against a participant in adjudicatory proceedings before state agencies and state courts based on its participation in those proceedings, fundamental interests are implicated that were not implicated in the situations before us in Bello and its progeny. Both the Constitution and the common law provide protection for those who petition the government.

"[T]he [First Amendment] right to petition extends to all departments of government" including administrative agencies and the courts. California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972). It is made applicable to the states by the Fourteenth Amendment. Hague v. Committee for Indus. Org., 307 U.S. 496 (1939). The protection it affords thus applies both to petitioning state agencies and to petitioning state courts. Moreover, this protection extends not only to petitioning for affirmative relief but also to petitioning in opposition to applications for relief by others. Armstrong Surgical Center, Inc. v. Armstrong County Mem. Hosp., 185 F.3d 154 (3d Cir. 1999) (holding that the First Amendment right to petition provides protection for opposition to a competitor's application to the State Department of Health for a Certificate of Necessity for a medical facility).

While the right to petition conferred by the First and Fourteenth Amendments does not provide an absolute immunity from liability for actions based on petitioning activity, see California Motor Transport, 404 U.S. at 513–14, the Supreme Court has held that such liability cannot be imposed in the absence of a finding that the position taken lacked any reasonable basis. In Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc. , 508 U.S. 49 (1993), Columbia Pictures sued Professional Real Estate Investors ("PRE") for copyright infringement. PRE filed a counterclaim under the Sherman Act and various state laws charging that the copyright infringement suit was a part of a conspiracy to monopolize and restrain trade. When Columbia Pictures moved for summary judgment based on its constitutionally protected right to petition, PRE argued that the copyright suit had been instituted in bad

11

faith, i.e., it was brought to restrain trade and without an "honest . . . beli[ef] that the infringement claim was meritorious." Id. at 54. The Supreme Court acknowledged that petitioning immunity did not extend to liability based on the institution or maintenance of "sham" litigation but held that litigation could be regarded as a "sham" only if it is "objectively baseless."

> We now outline a two-part definition of "sham" litigation. First, the lawsuit must be objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits. If an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome, the suit is immunized . . . , and an antitrust claim premised on the sham exception must fail. Only if challenged litigation is objectively meritless may a court examine the litigant's subjective motivation. Under this second part of our definition of sham, the court should focus on whether the baseless lawsuit conceals "an attempt to interfere directly with the business relationships of a competitor," through the "use [of] the governmental process-- as opposed to the outcome of that process -- as an anticompetitive weapon," Omni, 499 U.S., at 380 (emphasis in original).

Professional Real Estate Investors, 508 U.S. at 60-61 (citations omitted).

The petitioning immunity that the Court upheld in PRE was immunity from antitrust liability. The Court pointed out, however, that the principles being relied upon were not limited to antitrust liability and noted that the same principles had been applied by it to liability under the National Labor Relations Act. See Bell Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731 (1983) (holding that for a civil suit to be enjoined, there must be both an improper motive on the part of the plaintiff and a lack of a reasonable basis for the suit). Moreover, the Supreme Court in PRE stressed that its holding was consistent with the protection traditionally afforded petitioning activity under the common law:

> [T]he Court of Appeals correctly held that sham litigation must constitute the pursuit of claims so

12

baseless that no reasonable litigant could realistically expect to secure favorable relief.

The existence of probable cause to institute legal proceedings precludes a finding that an antitrust defendant has engaged in sham litigation. The notion of probable cause, as understood and applied in the common-law tort of wrongful civil proceedings, requires the plaintiff to prove that the defendant lacked probable cause to institute an unsuccessful civil lawsuit and that the defendant pressed the action for an improper, malicious purpose. Probable cause to institute civil proceedings requires no more than a "reasonabl[e] belie[f] that there is a chance that [a] claim may be held valid upon adjudication." Because the absence of probable cause is an essential element of the tort, the existence of probable cause is an absolute defense. Just as evidence of anticompetitive intent cannot affect the objective prong of [the] sham exception, a showing of malice alone will neither entitle the wrongful civil proceedings plaintiff to prevail nor permit the factfinder to infer the absence of probable cause.

Professional Real Estate Investors, 408 U.S. at 62-63 (footnote and citations omitted).

The law applied in PRE is generally referred to in the case law as the Noerr-Pennington doctrine.6 Since PRE, the courts of appeals have frequently held that the restrictions on liability there recognized are applicable to liability under state tort laws, e.g., State of Missouri v. National Organization of Women, 620 F.2d 1301, 1318-19 (8th Cir. 1980), and to liability under the Civil Rights Act, e.g., Video Intern Productions, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1075, 1084 (5th Cir. 1988) (". . . we hold that any behavior by a private party that is protected from anti-trust liability by the Noerr-Pennington doctrine is also outside to scope of S 1983 liability"); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607, 614-15

_____

6. From the seminal cases of Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers v. Pennington, 381 U.S. 657 (1965).

(8th Cir. 1980) (same); Stern v. United States Gypsum, Inc., 547 F.2d 1329, 1342–46 (7th Cir. 1977).

We reached a similar conclusion in Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155, 159–60 (3d Cir. 1988). There, two private individuals and a public official were charged with having conspired to mount a campaign to get the Commonwealth of Pennsylvania to revoke the license of the plaintiff nursing home. This conspiracy was alleged to have violated state tort law. In support of its case, the plaintiff submitted a "smoking gun" letter written by a member of the official's staff arguably reflecting an agreement to work together to secure termination of the license. We made the following observations that are instructive here:

> In a somewhat analogous situation, it has been held that persons who were successful in persuading the Forest Service to reduce or abandon its timber sales program to protect the wilderness quality of an area could not be liable under state tort law for interference with an advantageous relationship. Sierra Club v. Butz, 349 F. Supp. 934 (N.D. Cal. 1972). Judge Zirpoli based the decision on the First Amendment right to seek to influence government action.

> Two lines of cases support the Sierra Club decision and that which we uphold here: the defamation cases, e.g., New York Times v. Sullivan, 376 U.S. 254, 84 S. Ct. 710, 11 L.Ed. 2d 686 (1964), emphasizing the constitutional importance of communication on matters of public interest; and the Noerr–Pennington cases teaching that the collusive use by competitors of legislative, administrative or judicial process does not, without more, give rise to an anti-trust violation, see, e.g., Eastern R.R. Conference v. Noerr Motor Freight, 365 U.S. 127, 81 S. Ct. 523, L.Ed. 2d 464 (1961); California Motor Transport Co. v. Trucking Unlimited , 404 U.S. 508, 93 S. Ct. 609, 30 L.Ed 2d 642 (1972).

> The rule that liability cannot be imposed for damage caused by inducing legislative, administrative, or judicial action is applicable here. The conduct on which this suit is based is protected by the firmly

14

rooted principle, endemic to a democratic government, that enactment of and adherence to law is the responsibility of all.

Brownsville, 839 F.2d at 159-60 (footnote omitted).

Also helpful is our decision in McArdle v. Tronetti, 961 F.2d 1083 (3d Cir. 1992). There, a state employee, a prison counselor, allegedly prosecuted in bad faith a civil proceeding to have the plaintiff involuntarily committed to a mental health treatment facility. The plaintiff instituted his suit under the Civil Rights Act, 42 U.S.C. S 1983, claiming a violation of his right to substantive due process. We held that this claim was analogous to "a common law tort of malicious use of civil process by a state actor" and that "claims of malicious prosecution brought under Section 1983 `must include the elements of the common law tort as it has developed.' " Id. at 1088 (quoting Rose v. Bartle, 871 F.2d 331, 349 (3d Cir. 1989)). We cited to section 674 of the Restatement (Second) of Torts  as evidencing those elements. That section provides:

> One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if
>
>  (a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and
>
>  (b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

"In determining probable cause for initiation of civil proceedings, all that is necessary is that the claimant reasonably believe that there is a sound chance that his claim may be held legally valid upon adjudication." Restatement (Second) of Torts, S 675, cmt. (e) (1976).7

_____

7. Contrary to the suggestion of the dissent, we do not read Albright v. Oliver, 510 U.S. 266 (1994), a case dealing with an alleged malicious prosecution that implicated the Fourth Amendment, as overruling

15

Herr's S 1983 claim against the defendants in this case is analogous to the common law tort of malicious use of civil process by a state actor. Accordingly, liability cannot be imposed under the teaching of McArdle unless all elements of the common law tort are satisfied. This includes the requirement that the defendants resisted Herr's efforts to secure approval "without probable cause and primarily for a purpose other than securing the proper adjudication" of Herr's claim. Nor, of course, can liability be imposed in a manner inconsistent with the Constitution.

As Justice Souter points out in his concurring opinion in PRE, there may be a conceptual difference between the Constitutional "probable cause" requirement as articulated in PRE and the term "probable cause" as employed by the Restatement and the common law. PRE, 508 U.S. at 66–67 (Souter, J., concurring). PRE's "probable cause" is wholly objective –– liability may be imposed only if "no reasonable litigant could realistically expect to secure favorable relief." PRE, 508 U.S. at 62. The common law's "probable cause" may have a subjective component –– the defendant must "reasonably believe that there is a sound chance that his claim may be held legally valid." Restatement (Second) of Torts S 675, cmt. (e). In most situations, this will be a distinction without a difference. If a person has undertaken to participate in civil proceedings and the circumstances are such that he could have a reasonable expectation that he may succeed, it will be the rare case indeed in which he does not actually have that expectation. In any event, we need not determine in this case whether there are cases in which the distinction would make a difference. It does not here.

The record in this case will not support a conclusion that the defendants' resistance to Herr's application was frivolous in the sense that no reasonable litigant could

_____

McArdle, a case dealing with an alleged malicious use of civil process that did not implicate the Fourth Amendment. Also, contrary to the suggestion of the dissent, we believe McArdle stands for the proposition that the principles we endorsed in Brownsville are applicable to an alleged constitutional tort based on substantive due process.

16

realistically expect to prevail. Nor will it support an inference that the defendants had no belief that they had a "sound chance" of prevailing. As the District Court pointed out, they took no appeal from the LCPC's original conditional approval in 1992 and thus did not contest that Herr was entitled for five years to the benefits of the prior zoning ordinance. Moreover, their basic position in the sewer litigation that Herr had no vested rights to municipal sewer services under the 1971 sewage facilities plan was ultimately sustained by the Commonwealth Court. Thus, what Herr characterizes as a bad faith "end run" around the grandfathering provision of the zoning law was, in reality, a winning argument. Even Herr's "smoking gun" letter, to the extent it can be taken as reflecting the defendants' views, evidences that the Township expected that it might well prevail before the DER and that the possibility of the five year period expiring was regarded as only an additional, incidental benefit of the defendants' resistance before the state agency and the courts.

While Herr characterizes the defendants' resistance in conclusory terms as frivolous, he has not identified any specific issue and articulated why it was not a litigable one. Our search of the record has not identified such an issue, and we find no suggestion in the opinions of the decision-making agencies that any of them regarded the Township's positions as frivolous. Both the 1998 opinion of the Commonwealth Court in the sewer litigation and the 1999 opinion of the Court of Common Pleas in the ensuing litigation analyze the issues presented with care and some detail. If either court had viewed one or more of those issues as frivolous, we are confident that some evidence of that view would have found its way into the opinions.8

_____

8. We fail to perceive any similarity between this case and Grant v. City of Pittsburgh, 98 F.3d 116 (3d Cir. 1996). There we were asked to decide "whether, in applying Harlow's objective test for qualified immunity, a Court may `consider' evidence of a defendant's state of mind when motivation is an essential element of the civil rights claim." Id. at 123. Our answer was in the affirmative. That answer is not helpful here, however. Because the positions taken by the Township have not been shown to be "objectively baseless" or asserted without "probable cause," the motive behind taking those positions is not legally relevant to the propriety of the summary judgment entered against Herr.

17

IV.

To the extent the rule of decision here is grounded in the common law, it makes no difference whether we are analyzing the liability of the Township or the liability of the supervisors in their individual capacities. The elements of Herr's claim would be the same in either event, and if Herr has not come forward with evidence that satisfies each essential element of the analogous state tort, summary judgment is appropriate. To the extent the rule of decision here is an immunity rooted in the First Amendment, the analysis of the Township's liability involves an additional issue. It is clear that public officials sued in their individual capacity are entitled to the immunity provided under the Noerr-Pennington doctrine. See Brownsville Golden Age Nursing Home, 839 F.2d at 159-60. We have found no case addressing the issue of whether a municipal corporation is entitled to such immunity.[9] We predict, however, that the Supreme Court would hold that it is.

In situations of this kind, a township and its supervisors represent their constituents and facilitate their participation in the governmental process. Indeed, if municipal governments are discouraged from utilizing municipal funds to finance participation in proceedings before other governmental agencies, their citizens are likely to be left without a voice in important matters pending before those agencies. Moreover, municipal governments are among those most likely to be in possession of information relevant to the kinds of decisions that had to

_____

9. The dissent cites one case, Video International Production, Inc. v. Warner-Amex Cable Communications, Inc., 858 F.2d 1073 (5th Cir. 1988), as standing for the proposition that petitioning immunity cannot apply to a public entity. In that case, however, the plaintiff did not seek to impose liability on the defendant city based on petitioning activity. The complaint was based on the city's own zoning enforcement decisions and, as the Court noted, "it is impossible for the government to petition itself." Id. at 1086. Video International did not involve a situation, like the one before us, in which the plaintiff seeks to impose liability on a municipality for petitioning a distinct public entity authorized by state law to resolve land planning issues. Video International would be of help here only if Herr were suing a public entity which had denied it a permit for reasons unrelated to the merits of the permit application.

18

be made here and are among those most likely to be aware of the decision makers' need for information. A rule which would discourage municipalities from expressing concerns and taking a position before other governmental agencies would "deprive the government of a valuable source of information." Noerr, 365 U.S. at 139. Granting petitioning immunity to townships would thus serve the purposes of the right to petition clause. While the Supreme Court has held that townships are not entitled to the across-the-board, common law, qualified immunity enjoyed by public officials who exercise discretionary functions, Owen v. City of Independence, 445 U.S. 622, 649-50 (1980), the rationale of that decision is inapposite here. Petitioning immunity is a limited immunity based on a specific provision of the Constitution itself and extending it to townships would not only be consistent with, but would further, the purposes of the right to petition clause.

We therefore hold that neither the Township nor its supervisors may be held liable based on the delays occasioned by the proceedings before the LCPC and other public bodies in the absence of a showing, not made upon this record, that they lacked "probable cause" for the positions they took.

V.

In addition to the claims predicated on the delays occasioned by the proceedings before the LCPC and other public bodies, Herr's brief makes the following allegations:

> As in Blanche Road, there is substantial evidence that defendants tried to delay or stop Mr. Herr's development through "extra scrutiny" of Mr. Herr's plans -- both improper reviews and never-ending searches for "problems" with or additional conditions for the plans. Additional "problems" or conditions, the Township supposed, might cause the LCPC to disapprove the project or Mr. Herr to abandon it. For example, there is evidence that defendants caused the Township zoning officer to give special attention to reviews of plans for Millwood Industrial Park. Similarly, there is evidence that the Township conducted

19

numerous, time-consuming reviews to find "every possible violation" in Mr. Herr's plans (Blanche Road, 57 F.3d at 260) and, thereafter, reported all such reviews to the LCPC in the hope that the LCPC would disapprove the plans.

Finally, there is evidence of the Township's and the Supervisors' efforts to foster unfounded opposition to Millwood Industrial Park from public agencies and private parties alike. The Township repeatedly sent out letters attempting to "engender any concerns" or otherwise "get Mr. Herr on something else" (Blanche Road, 57 F.3d at 258) as a means to "slow down and shut down" (Id. at 260) the project.

Appellant's Br. at 31-32.

While these charges are cast in a somewhat different form and are obviously intended to bring these aspects of Herr's case within the teachings of Blanche Road , we conclude that they, too, are barred by the protection afforded for petitioning activity. To the extent these claims are based on communications to the LCPC and other responsible state agencies, a straightforward application of the principles already discussed leads to the conclusion that there can be no S 1983 liability. Calling concerns about a proposed development to the attention of the responsible state agencies lies at the core of privileged activity, and this is true without regard to the number of concerns expressed so long as there is some rational basis for those concerns. In making these charges, Herr has identified no problem communicated to a state agency that has been shown to have no rational basis.

In Blanche Road, we held that the defendants might have exposed themselves to S 1983 liability "by ordering that Blanche Road's applications be reviewed with greater scrutiny in order to slow down the development." 57 F.3d at 269. We so held, however, in the context of a situation in which the defendants comprised the permitting authority and their alleged conduct "improperly interfered with the process by which the township issued permits . . . for reasons unrelated to the merits of the application for permits." Blanche Road, 57 F.3d at 267-68.

20

Here, the charge is that the defendants instructed Township employees to apply "extra scrutiny" in their review of Herr's proposal in order to identify problems relevant to Herr's application before the LCPC and other state agencies. We conclude that this essential precursor to the Township's actual communications with the state agencies also comes within the law's protection for petitioning activity and that this is true regardless of how thorough the employees were instructed to be in identifying problems with the jurisdiction of the petitioned agencies.

VI.

The judgment of the District Court will be affirmed.

21

GARTH, Circuit Judge, dissenting:

I must dissent from the majority's opinion, because I would hold that there exists a genuine issue of material fact as to whether Pequea Township's actions violated Herr's substantive due process rights and, therefore, I would remand for trial. I part company from the majority, which holds that the 1st Amendment right to petition permits the Township to use litigation and the judicial process in order to prevent Herr from developing his property. For the following reasons, in my opinion, the majority has erred:

1. Many of the actions taken by Pequea Township, which deliberately delayed and obstructed Herr in the development of his property, were actions which arose from other than Court proceedings and the judicial process, and thus may not be considered within the rubric of the Township's right to petition under the 1st Amendment. In short -- Herr's evidence in support of this substantive due process claim is not simply limited to the Township's litigious behavior.

2. Pequea itself has rejected any claim or theory dependent upon the right to petition. In short -- Pequea has declined to rely on any such theory even after it was encouraged to do so.

3. Even if a right to petition were relevant in this case (as the majority believes it to be), it cannot defeat or overcome an individual's substantive due process right where the Township of Pequea has engaged in arbitrary and capricious developmental conduct. In short -- the improper motives of the Township cannot be immunized by resorting to a right to petition theory and the majority has cited to no authority which would support such aberrant jurisprudence.

     a. In an effort to bolster its conclusion that Herr's action is barred by Pequea Township's right to petition -- a theory to which not even Pequea itself has subscribed -- the majority claims that the Noerr-Pennington doctrine supports its thesis.[1] But Noerr-

_____

1. Named after two Supreme Court cases, Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), and United Mine Workers v. Pennington, 381 U.S. 657 (1965), Noerr-Pennington immunity protects private parties from antitrust liability flowing from valid petitioning activity to the government.

22

Pennington immunity applies to private, not governmental, entities, and as I have pointed out and will amplify later in this dissent, Herr's charges encompass more than just petitioning activity. In short -- Noerr-Pennington immunity may not be looked to in an effort to resolve this controversy.

4. Of even greater significance, the majority has ignored, and has not even referred to, a Third Circuit opinion relevant here. Grant v. Pittsburgh, 98 F.3d 116 (3d Cir. 1996) holds, albeit in a qualified immunity context, that claims of substantive due process violations of the kind alleged by Herr require careful examination by the courts of the motive and intent of the relevant government entity involved. In short -- the majority's opinion would ignore Grant's teachings, and would preclude Herr's evidence of improper motive and intent on the basis of a right to petition. That preclusion is not recognized in our jurisprudence.

I.

It should be recalled that Herr is a landowner with property in Pequea Township. He submitted a plan for an industrial park to the Lancaster County Planning Commission ("LCPC"), which granted preliminary and final approval to his plan. According to the relevant Pequea Township ordinances, Herr's industrial park was to be provided with public sewer service. It was only after Herr received approval from the LCPC that the Township modified its ordinances and engaged in multiple court and other actions which the record reveals were designed to prevent the development of Herr's property in accordance with the industrial nature of the zoning approval. It did so because the Township desired the property to be used for agricultural purposes rather than the zoned industrial purposes.

Herr, whose legal position to develop an industrial property was eventually upheld by the courts of Pennsylvania,2 faced roadblocks at every step of his

_____

2. The majority provides that the Township's"basic position in the sewer litigation that Herr had no vested rights to municipal sewer services

attempts at industrial development for over eleven years. It was not just a case of litigating his rights (which he was forced to do), but it was a case where the Township, which had a very deliberate and intentional motive to prevent Herr from developing his property, obstructed Herr at every turn of the road.

Both parties tried this case to summary judgment on the issue that Herr's substantive due process rights had been violated. Counsel for both parties rejected the majority's suggestion that McArdle v. Tronetti, 961 F.2d 1083 (3d cir. 1992), had anything to do with Herr's predicament. McArdle is a classic malicious abuse of prosecution case, whose viability is in substantial doubt after the Supreme Court decision in Albright v. Oliver, 510 U.S. 266 (1994). Moreover, neither counsel relied on any aspect of Pequea Township's 1st Amendment right to petition or the Noerr-Pennington doctrine. Rather, both parties in this case approached the issue on appeal in a straight-forward manner -- the one asserting and the other denying a substantive due process violation.

The plaintiff, Herr, contended that Pequea Township was motivated by a desire to retain his property as agricultural property. Herr, who had purchased the property and was "grandfathered" into the zoning of the property as industrial (so long as he developed the property within five years), claimed that Pequea Township's acts were taken in bad faith and with an improper motive, thus preventing him from developing his property. Pequea, on the other hand,

_____

under the 1971 sewage facilities plan was ultimately sustained by the Commonwealth Court," and therefore was a "winning argument." Maj. op. at 17. This reading by the majority, however, does not tell the whole story. In fact, the Commonwealth Court -- while disagreeing with the Environmental Hearing Board and ruling that the protection offered to a developer's approved plan under S 508 of the Pennsylvania Municipalities Planning Code did not apply to sewage facility plans-- nevertheless found the Board's error to be harmless and ruled in favor of Herr. See Pequea Township v. Herr, 716 A.2d 678, 684-85 (Pa. Commw. Ct. 1998). Indeed, the Commonwealth Court agreed that "Herr had established that [Pequea Township's] 1992 sewage plan was inadequate to meet Herr's sewage disposal needs," and upheld Herr's right to municipal sewage services from Pequea. Id. at 685.

argued that motive was not an issue, and that if it had been, their motives were proper.

I suggest that this is the issue that must be resolved, not the issues manufactured by the majority on which they have decided to resolve this controversy.

II.

We have held that "non-legislative state action," which is the type of state action at issue here, "may . . . give rise to a substantive due process claim upon allegations that the government deliberately and arbitrarily abused its power." Nicholas v. Pennsylvania State University, 227 F.3d 133, 139 (3d Cir. 2000) (internal quotation marks omitted). A substantive due process claim arising out of non-legislative state action has two elements: 1) "we must look, as a threshold matter, to whether the property interest being deprived is `fundamental' under the Constitution," Nicholas, 227 F.3d at 142; and 2) the plaintiff "also must demonstrate that [he] was the victim of `a governmental action [that] was arbitrary, irrational, or tainted by improper motive.' " Woodwind Estates, Ltd. v. Gretowski, 205 F.3d 118, 124 (3d Cir. 2000). Grant v. City of Pittsburgh, 93 F.3d 116, 124-25 (3d Cir. 1996) adds that a court is to consider evidence of a defendant's state of mind [here, Pequea's] when motivation is an essential element [as it is here] of the plaintiff 's [Herr's] civil rights claim.

A.

There can be no doubt that the property interest at issue here is "fundamental." "Indeed," as we held in DeBlasio v. Zoning Board of Adjustment for the Township of West Amwell, "one would be hard-pressed to find a property interest more worthy of substantive due process protection than ownership." 53 F.3d 592, 601 (3d Cir. 1995). Accordingly, I believe, and the majority agrees as well, see maj. op at 10, that the District Court properly held that Herr's interest in developing his property was an interest worthy of due process protection.

25

B.

Because Herr has alleged a violation of a fundamental property interest, it must be determined whether Herr has suffered from "a governmental action [that] was arbitrary, irrational, or tainted by improper motive." Bello v. Walker, 840 F.2d 1124, 1129 (3d Cir.1988). We have made clear that, "[i]n disputed factual situations, the determination of the existence of improper motive or bad faith is properly made by the jury as the finder of fact." Woodwind Estates, Ltd. v. Gretowski, 205 F.3d 118, 124 (3d Cir. 2000). We also observed in Woodwind that "we have not hesitated to vacate a grant of summary judgment or a judgment as a matter of law where the evidence at least plausibly showed that the government took actions against the developer for indefensible reasons unrelated to the merits of the zoning dispute." 205 F.3d at 124. In this context, "the intentional blocking or delaying of the issuance of permits for reasons unrelated to the merits of the permit application violates principles of substantive due process and is actionable under S [1]983." Woodwind, 205 F.3d at 124-25.

Looking at the facts in the light most favorable to Herr, because it was Pequea Township, the defendant, which had moved for summary judgment, I believe that a rational jury could and would certainly find that the Township intentionally blocked or delayed Herr's development of his property "for reasons unrelated to the merits" of his development plan. Indeed, the evidence suggests that the Township used every effort -- including access to the courts -- to hinder development of Herr's land.

There is extensive evidence from which a jury could find that the Township acted arbitrarily, irrationally, or with improper motive. Alan S. Peterson ("Peterson"), Chairman of the Pequea Township Environmental Advisory Council, sent numerous letters in 1990 to such places as the Nature Conservancy, the Pennsylvania Historical and Museum Commission, the Pennsylvania Game Commission, and the Pennsylvania Fish Commission, asking them to review Herr's proposal "for possible endangered species or other environmental rarities," "for possible historical or archaeological significance," and "for . . . species of special concern." (App. 612a-615a.) Peterson also sent another

26

round of letters in early 1992 to the Lancaster Water Authority, the Pennsylvania Power & Light Company, the Suburban Lancaster Sewer Authority, and Department of Transportation, among others, informing them about concerns related to Herr's proposal. (App. 616a-622a.) Additionally, Virginia K. Brady ("Brady"), a member of the Township Board of Supervisors and a defendant in this action, sent similar letters in October 1993 to the Department of Transportation, the Bureau of Dams and Waterways, the Department of the Army, and the Lancaster City Engineer in October 1993. (App. 638a-641a.)

Peterson sent a letter to Eugene Dice, an attorney, stating:

> Only Virginia Brady and I in the township know the following: (Do not state this back to the township in any manner). The owner must sell the lots, then all the land development plans must be approved by 10/94 or they become nonconforming lots in the Ag. District. Obviously the longer we can stall (if we can't win this with DER), the better. . . . We want this defeated after our four year struggle!

(App. 374a-375a (emphasis added).)

Brady stated at her deposition: "Development is not bad. However, to put -- and this is a personal opinion-- to put development on prime agricultural soils is not right, and that is a personal belief I have had for many, many, many years." (App. 216a.). Additionally, Brady was quoted in a 1997 newspaper article, regarding the "battle" between Herr and Pequea Township over his development plan, as stating: "We already have an industrial park," and "I am opposed to paving over any prime agricultural land." (App. 585a-586a.) Bruce Groff, another member of the Board of Supervisors and a defendant in this action, was quoted as saying that "support [for rural preservation] is desperately needed to deter recent and future horrendous proposals being prepared by developers." (App. 379a.)

Herr received a letter in April 1999 from Robert G. Sneath, whose company had been a potential buyer of space at Herr's proposed industrial park, in which Mr.

27

Sneath requested that Herr release him from the agreement of sale, explaining:

> My Associate, Glenn Warfel, talked to the zoning officer about our plans. His name is Wes Brocknoe. . . Glenn was informed that your plans were under litigation and the land was still zoned agricultural by Pequea Township. The zoning officer was not at liberty to talk about it. With timing important to us, this was not encouraging.

(App. 210a.) Mr. Sneath also stated, "Quite frankly, everything I have heard about dealing with Pequea Township is negative. I have no desire to invest my money in a township with a negative attitude. It looks like this development could take forever to be approved by the township." (App. 210a.)

In light of this evidence, it is clear to me that the issue of whether the Township had an improper motive must be sent to the jury. Indeed, it is inconceivable to me how the District Court could have held otherwise. The District Court analyzed the evidence without regard to the fact that the issue of improper motive was before the court on a summary judgment motion, in which the court was required to draw all reasonable inferences in Herr's favor. Instead, the District Court several times drew inferences in Pequea Township's favor in direct contravention of the summary judgment standard.

For instance, the District Court drew the following conclusions from the evidence: 1) "the reasonable inference to be drawn is that Defendants wished to zone [another land parcel which was permitted to remain industrial] consistently with its current use, rather than carry out the pointless exercise of changing the zoning to agricultural but grandfathering the preexisting industrial use"; 2) "there is no evidence before us that Defendants knew they could not stop development of Millwood Park, yet acted merely to delay and harass Plaintiff "; 3) "the mere fact that Dr. Peterson claims that Virginia Brady was aware of the time limit imposed by [the grandfather clause under which Herr's land was zoned industrial] does not imply an improper motive on her part"; 4) there was "no basis for an

28

inference that Defendants pursued the sewer litigation for any purpose other than a genuine desire not to have Millwood Park come about in the form proposed by Plaintiff "; and 5) "[t]here is no basis to determine what the true motives [of the Township] were." (App. 21a–25a.)

Additionally, I should note that a motive on the part of the Township to prevent industrialization of land, i.e., "not to have Millwood Park come about in the form proposed by Plaintiff," (App. 25a), is not related to the merits of the zoning dispute between Herr and the Township. Herr had already submitted his plan to a separate governmental entity (the LCPC), which approved Herr's plan before the Township could pass legislation which would prevent the proposed development. The fact that the Township properly enacted new zoning and sewage ordinances with the goal of reducing development does not mean that its actions to attempt to defeat a development plan that had legitimately escaped its regulation were proper. Indeed, in my view, the Township's motive in enacting new ordinances and plans relating to land use is irrelevant, and the District Court erred in considering it.

III.

The majority holds that the Township's litigation–related actions are protected by the 1st Amendment right to petition and that, therefore, they cannot form the basis of Herr's substantive due process claim. Holding that Herr could not prove any injury without these actions, the majority affirms the District Court's summary judgment dismissal of Herr's substantive due process claim. I cannot agree with this holding because the right to petition does not bar substantive due process liability for litigation arbitrarily and irrationally initiated by a governmental entity.

A. Pequea's Actions Other and Apart from Litigation

As an initial matter, Herr's evidence in support of his substantive due process claim is not simply limited to the Township's litigious behavior. Herr presents evidence of a litany of conduct by the Township above and beyond its

29

litigation activity over a span of eleven years-- all of which was purportedly designed to delay and block the industrial development of Herr's land.

This evidence includes: (1) proof of the Township's campaign since 1990 to find problems with, or raise unfounded concerns about, Millwood Industrial Park with the hope that the problems raised would lead to delays leading past the five-year grandfather period; (2) proof of the Township's "extra scruntiny" of Herr's applications in an effort to delay the development past the five-year period; (3) proof of the Township's denial of Herr's applications for public sewer service motivated by reasons unrelated to water-quality issue but rather by Pequea's desire to hold up Herr's development; and (4) proof that the Township's issuance of an enforcement notice was part of a campaign to delay development. This conduct has nothing to do with litigation or petitioning activity before the LCPC or state courts, and therefore -- even assuming the majority's right to petition is correct -- it would not be immunized by the 1st Amendment.

B. Counsel's Rejection of Pequea's Petitioning Right

Next, Pequea Township itself has rejected any claim or theory dependent upon the right to petition, declining to rely on any such theory even after it was encouraged to do so. Not only was this theory never raised, entertained or discussed by the very party to whose benefit it would redound, but when asked for supplemental memoranda pertaining to that issue, both Herr and Pequea declined to embrace or rely on such a theory. They did so because both parties recognized that this case was a garden variety substantive due process proceeding.

Likewise, the majority's reliance upon McArdle v. Tronetti, 961 F.2d 1083 (3d Cir. 1992) -- which it urged upon the parties -- is inapposite. There, we analyzed the plaintiff 's S 1983 claim as a malicious use of civil process claim in violation of his 14th Amendment rights. Referring to Lee v. Mihalich, 847 F.2d 66 (3d Cir. 1988), and its progeny, we reasoned that "a claim of malicious use of process may state a S 1983 claim if it includes the elements of that

30

common law tort as it has developed." McArdle , 961 F.2d at 1088. Accordingly, we required that such a claim requires proof that (1) the defendant "acted in a grossly negligent manner or without probable clause and primarily for a purpose other than that of securing the proper . . . adjudication of the claim in which the proceedings are based; and (2) the proceedings have terminated in favor of the person against whom they are brought." Id.

Setting aside the issue of McArdle's questionable viability after the Supreme Court decision in Albright v. Oliver, 510 U.S. 266 (1994),3 the majority, by claiming that "Herr's S 1983 claim against the defendants in this case is analogous to the common law tort of malicious use of civil process by a state actor," see maj. op. at 16, again directly contradicts the repeated and equivocal positions of both Herr's and the Township's counsel that Herr's claims were not malicious use of process claims. Indeed, in a Supplemental Letter Brief dated June 1, 2000 (ordered by this Court), the Township specifically conceded that:

> the McArdle principles do not apply to the instant appeal. . . . Because the issues regarding abuse of process have not been raised by [Herr] in the instant appeal and because [Herr] has not produced evidence to allow a finding of abuse of process, [the Township] argues that McArdle has no relevance to the instant appeal. . . . [T]he principles of McArdle  have no determinative effect on this Honorable Court's ability to decide that there is insufficient evidence of record to support a reasonable jury finding of a substantive due process violation.

Similarly, Herr agrees that his claims are not malicious use of process claims. While I acknowledge that we should recognize the correct jurisprudence even if counsel declines

_____

3. The Supreme Court's holding in Albright  -- which suggested that a malicious prosecution claim must be anchored in explicit constitutional text, such as the Fourth Amendment, rather than generalized notions of due process -- has cast doubt on the viability of Lee v. Mihalich and its progeny, including McArdle. See,e.g., Gallo v. City of Philadelphia,161 F.3d 217, 222 (3d Cir. 1998) ("[Albright] has created great uncertainty in the law" of malicious prosecution under S 1983 and Bivens).

31

to do so, we should not, as the majority has done here, devise our own theory of liability (or immunity) after counsel has deliberately rejected that theory, particularly since it is flawed and lacks support in our jurisprudence. Indeed, I think it is inappropriate and improvident to substitute a panel's theory for counsel's, particularly when it is obvious from our own jurisprudence that the issue of improper motive in a substantive due process case is one for the jury and not for the judge. See Woodwind , 205 F.3d at 124; Grant, 93 F.3d at 124-25.

Nevertheless, even if McArdle were applicable, Herr's claims (as discussed previously) encompass more than just abuse of process. Rather, his claims are based upon specific evidence showing that the Township blocked and delayed the industrial development of his land at every possible turn. The use of the court system is just one, albeit important, evidentiary example of the Township's tactics. Accordingly, the holding in McArdle -- even if applicable -- is too circumspect to be of value as to Herr's claims of substantive due process.

C. A Right to Petition Cannot Trump Illegal Municipal Actions and Cannot Defeat a Legitimate Substantive Due Process Claim

Even if a right to petition were relevant in this case, it cannot defeat or overcome an individual's substantive due process right where evidence has been presented that the Township of Pequea has engaged in arbitrary and capricious behavior. The improper motives of the Township cannot be immunized by resorting to a right to petition and the majority has cited to no authority which would support such aberrant jurisdiction.

Though it is true that the First Amendment encompasses a right to petition, this right is "not absolute." San Filippo v. Bongiovanni, 30 F.3d 424, 435 (3d Cir. 1994). Additionally, the doctrine of substantive due process does not require that the actions taken by the government be illegal to constitute a due process violation. Instead, substantive due process "protects individual liberty against `certain government actions regardless of the fairness of the

32

procedures used to implement them.' " Collins v. Harker
Heights, 503 U.S. at 125 (quoting Daniels v. Williams, 474
U.S. 327, 331 (1986)) (emphasis added). Indeed, courts
have repeatedly explained that substantive due process
protects against "the arbitrary exercise of the powers of
government." Bello v. Walker, 840 F.3d 1124, 1128 (3d Cir.
1988) (internal quotation marks omitted). Implicit in this
statement is that the actions that form the basis of
substantive due process claims are actions that are within
the government's power but nevertheless may be
constitutional violations in a particular case because of the
government's motive in exercising that power.

Accordingly, because of this clear indication in
substantive due process jurisprudence that it is not the
government's legal authority to exercise its power but its
motive that is relevant in analyzing a substantive due
process claim, I cannot agree with the majority's holding
that the Township did not violate Herr's substantive due
process rights simply because its actions were protected by
the right to petition.

By immunizing motive and intent whenever there is
petitioning activity on the part of the government, the
majority effectively renders the 14th Amendment powerless,
turning it into mere surplusage any time improper litigious
activity by a municipality is asserted. This "would
essentially insulate government officials from liability for the
very harm our substantive due process precedents have
sought to redress: using government authority to take
actions that, because of the improper motives of public
officials, have no rational relationship to a legitimate
government purpose." Grant, 98 F.3d at 125 (emphasis
added).

In this way, the right to petition -- which, by the
majority's reasoning, virtually always defeats any evidence
of a substantive due process violation -- would insulate the
Township from the very arbitrary and capricious
governmental conduct that is meant to be protected by the
14th Amendment. By this reasoning, the right to petition
would also immunize a municipality of liability under the
Equal Protection Clause -- also a 14th Amendment claim
-- notwithstanding evidence that a particular municipality

33

had pursued delay litigation tactics because of an individual's race or religious beliefs, just so long as it could articulate some non-frivolous justification to support its lawsuit. Such a result is clearly contrary to our constitutional jurisprudence.

D. Noerr-Pennington is Not Applicable and Not Relevant to Government Misconduct

In an effort to bolster its conclusion that Herr's due process claim is barred by the Township's right to petition, the majority claims that the Noerr-Pennington doctrine supports its thesis. In our most recent exposition of the doctrine, we have described Noerr-Pennington immunity as follows:

> Under the Noerr-Pennington doctrine, private parties may be immunized against liability stemming from antitrust injuries flowing from valid petitioning. This includes two distinct types of actions. A petitioner may be immune from the antitrust injuries which result from the petitioning itself. Also . . . parties are immune from liability arising from the antitrust injuries caused by government action which results from petitioning.

A.D. Bedell Wholesale Company, Inc. v. Philip Morris Inc., 263 F.3d 239, 251 (3d Cir. 2001) (citations omitted). "Rooted in the First Amendment and fears about the threat of liability chilling political speech," the Noerr-Pennington doctrine generally insulates a private entity which petitions the government for redress from antitrust liability"even if there is an improper purpose or motive" behind the petitioning activity. Id. at 250 (emphasis added). We have also noted that "the immunity reaches not only to petitioning the legislative and executive branches of government, but `the right to petition extends to all departments of the Government,' including the judiciary." Id. (quoting California Motor Transp. Co. v. Trucking Unlimited, 404 U.S. 508, 510 (1972)).

The Noerr-Pennington doctrine, and the rationale behind it, however, is not applicable here. First, in this case, it seeks to immunize too much. Because Herr's charges include more than appropriate petitioning activity on

34

Pequea's part (see Section III.A., supra ), the application of Noerr–Pennington here cannot insulate or immunize Pequea from Herr's claims.

Second, and more importantly, however, Noerr–Pennington immunity applies to private parties -- not governmental entities -- seeking redress from the government. See Video International Production, Inc. v. Warner–Amex Cable Communications, Inc., 858 F.2d 1075, 1082–84, 86 (applying Noerr-Pennington protection to private cable operator against antitrust, tort and S 1983 co-conspirator liability, but noting as to municipal liability that"Noerr–Pennington protection does not apply to the government"); see also Professional Real Estate Investors, Inc. v. Columbia Pictures Ind., Inc., 508 U.S. 49 (1993) (protecting private movie companies against antitrust liability); Bill Johnson's Restaurants, Inc. v. NLRB, 461 U.S. 731 (1983) (extending 1st Amendment protection to private employer who filed lawsuit against former employee allegedly in violation of the National Labor Relations Act); California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508 (1972) (refusing to apply 1st Amendment protections to private trucking company because it fell within "sham" exception); Gorman Towers, Inc. v. Bogoslavsky, 626 F.2d 607 (8th Cir. 1980) (immunizing private defendants against S 1983 liability on the basis of Noerr–Pennington protection, but holding public officials immune on grounds other than Noerr–Pennington immunity); State of Missouri v. National Organization for Women, 620 F.2d 1301 (8th Cir. 1980) (protecting private women's organization against antitrust liability); Stern v. United States Gypsum, Inc., 547 F.2d 1329 (7th Cir. 1977) (protecting corporation and its officers againstS 1985 liability). To the extent that the majority has cited one case that could arguably be seen as extending this immunity to a governmental entity, the protection immunized the party only against statutory liability, not against a constitutional deprivation. See Armstrong Surgical Center, Inc. v. Armstrong County Memorial Hospital, 185 F.3d 154 (3d Cir. 1999).4

_____

4. In Armstrong, Noerr–Pennington protection was afforded to a hospital and its staff physicians from antitrust liability under the Sherman Act.

35

Accordingly, the application of the Noerr–Pennington doctrine cannot resolve, and cannot be analogous to, the following conflict: whether a governmental entity's [Pequea's] 1st Amendment right to petition always trumps an individual citizen's [Herr's] 14th Amendment due process right to be free from arbitrary and capricious government activity.5 The majority provides no authority extending Noerr–Pennington to conduct by government entities which have been shown to have acted in violation of constitutional restrictions. Nor do I know of any authority purporting to extend Noerr–Pennington in such a way so as to per se defeat an individual's constitutional rights under the 14th Amendment.

One of the cases cited by the majority, Brownsville Golden Age Nursing Home, Inc. v. Wells, 839 F.2d 155 (3d Cir. 1988), involved a nursing home operator that filed state tort claims against two private individuals and a public official. There, the nursing home alleged that the defendants improperly scrutinized its operations through a publicity and letter-writing campaign which ultimately led to its loss of license. This Court affirmed the district court's grant of summary judgment against the nursing home because it failed to "raise a material issue of fact" on its state law claims of tortious interference with business relations and civil conspiracy. Id. at 159 (emphasis in original). Specifically, we agreed with the district court that

_____

While the caption of that case suggests that the hospital may have been a county hospital, the issue of whether it was a"municipality" or a "government entity" was never addressed. Indeed, the opinion itself appears to have referred to the defendant hospital as a "private party" a number of times, and explicitly characterized the Noerr–Pennington immunity as an "immunity for private parties." See, e.g., id. at 159–61, 62 (emphasis added).

5. It is axiomatic that government entities, unlike private citizens, are limited by the Constitution from certain conduct in ways that individuals are not (see, e.g., the Due Process Clause and the Equal Protection Clause). Therefore, providing a private citizen an absolute per se immunity arising from his or her 1st Amendment right to petition is far different than providing such an absolute constitutional right to a governmental entity such as Pequea Township.

36

the plaintiff failed to show that the defendants actions were "unlawful" or "improper" (as required by those torts) since the Pennsylvania courts had conclusively determined that the revocation of the home's license was warranted "because of its serious violations of nursing home standards." Id.

Invoking, by analogy, the principles underlying defamation cases, e.g., New York Times v. Sullivan, 376 U.S. 254 (1964), and Noerr-Pennington cases, we held that the defendants' actions "in calling [plaintiff 's] violations to the attention of state and federal authorities and eliciting public interest cannot serve as the basis of tort liability." Brownsville, 839 F.2d at 160. This ruling is a far cry from the situation in this case wherein Herr has presented credible evidence showing that the Township's motivations behind its delay tactics and in litigating the "sewer" issue were prompted by a desire to thwart Herr from his rightful claim to develop his property as well as a scheme to delay Herr sufficiently such that his five-year grandfather period would expire. In addition, unlike the allegations made in Brownsville, Herr's claims sound in direct constitutional authority and not in state common law or statutory liability.

E. Grant v. Pittsburgh

Finally, by disregarding evidence of the Township's motive and intent, the majority has ignored our holding in Grant v. Pittsburgh, 98 F.3d 116 (3d Cir. 1996). There, Grant (a land developer) brought suit against certain city officials under S 1983 alleging, inter alia, violations of his substantive due process rights. In particular, Grant claimed that the nomination by city officials of two buildings for historic preservation under the Pittsburgh Historic Structures, District, Sites and Objects Ordinance, Pittsburg, Pa. Code Title 1007, S 513, effectively prevented the buildings from being demolished and thereby thwarted Grant's plans to develop the property on which the buildings were located. Grant alleged that the nomination was not motivated by public interest, but rather by partisan and personal politics having no bearing on the historic

37

preservation of the buildings. The defendants claimed qualified immunity.

The district court, failing to consider each defendant's role individually in the alleged conduct, nonetheless denied the officials' summary judgment motion based upon qualified immunity. This Court remanded the qualified immunity issue for reevaluation as to the specific conduct of each defendant, but specifically noted that "courts are not barred from examining evidence of a defendant's state of mind in considering whether a plaintiff has adduced sufficient evidence to withstand summary judgment on the issue of qualified immunity, where such state of mind is an essential element of the constitutional violation itself." Id. at 124 (citations omitted). In particular, our Court specifically recognized that,

> [t]he substantive due process violation alleged in this case is precisely the sort of claim where clearly established law makes the conduct legal or illegal depending upon the intent with which it is performed . By their very nature, substantive due process claims of this kind involve the application of otherwise legitimate government machinery to achieve an illegitimate end.
> . . . [W]hen the same officials invoke administrative processes with an illicit purpose, they are violating substantive due process guarantees and, at the same time, `clearly established' law.

Id. at 125 (citations omitted) (emphasis added). Although decided in the context of qualified immunity, Grant expressly recognizes and acknowledges that substantive due process claims often involve the use of legitimate governmental processes by government officials for illegitimate ends, and that the proper inquiry focuses not upon the propriety of the processes utilized, but rather upon the motives of the officials involved.

Here, the very essence of Herr's substantive due process allegations depend upon the motives behind the actions taken by the Township and the individual defendants. As already discussed (see Section II.B., supra), Herr has presented particularized and specific evidence which-- if credited -- could reasonably lead a jury to conclude that

38

the actions by Pequea Township in this case were motivated by illicit purposes, and thereby violated Herr's substantive due process rights under the 14th Amendment.

IV.

The District Court noted that "we believe Defendants are entitled to qualified immunity." (App. 30a.) The Supreme Court stated in Harlow v. Fitzgerald: "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." 457 U.S. 800, 818 (1982). I would hold that the defendants here should have known that their actions may have violated Herr's substantive due process rights and, therefore, they are not entitled to qualified immunity. However, because I am satisfied that the issue of "improper motive" must be returned for jury determination, even though I believe that the Township has violated Herr's constitutional right and that the right was clearly established at the time of the violation, I would hold that the qualified immunity issue should be addressed not by us but in the District Court.

Such a holding would be consistent with our holdings in Blanche Road Corp. v. Bensalem Township and Woodwind, both of which involved substantive due process challenges to governmental interference with land development plans. In Blanche Road, we stated:

> In the instant case . . . , when the evidence is viewed in the light most favorable to plaintiffs, it is clear that defendants could not have reasonably believed that their conduct did not violate [plaintiffs']6 rights. If defendants, for reasons unrelated to an appropriate governmental purpose, intentionally conspired to impede the development of the Blanche Road project, by ordering that Blanche Road's applications be reviewed with greater scrutiny in order to slow down

---

6. The text of the opinion says "defendants' rights," but this is clearly a
typographical error.

the development and by ordering that efforts be taken to shut down the development, such an arbitrary abuse of governmental power would clearly exceed the scope of qualified immunity. Accordingly, the defense of qualified immunity is not available to defendants in the instant matter.

57 F.3d 253, 269 (3d Cir. 1995). Similarly, we held in Woodwind that: "In the instant case . . . , when the evidence is viewed in the light most favorable to plaintiff, it is clear that the supervisor defendants could not have reasonably believed that their conduct did not violate plaintiff 's rights." 205 F.3d at 125.

I believe that the defendants in this case have even less claim to qualified immunity than the defendants in Blanche Road. If the right to be free from state intervention with land development was clearly established when Blanche Road was decided (in 1995), it is even more clearly established now in light of the Third Circuit's decision and holding in Blanche Road.

V.

I would reverse the District Court's grant of summary judgment to Pequea Township and remand the case for trial, because Herr has a fundamental property interest; there is a genuine issue of material fact as to whether the Township acted with an improper motive; and the Township's delay tactics, including its initiation of litigation, is not protected from substantive due process analysis by any claimed right to petition. Because the majority of the panel holds otherwise, I respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

40