Paul J. McARDLE, Appellant,

v.

Michael J. TRONETTI and Steven
Reilly, Appellees.

No. 91–3601.

United States Court of Appeals,
Third Circuit.

Argued Jan. 22, 1992.

Decided April 17, 1992.

Paul J. McArdle, argued, pro se.

Francis J. Klemensic (argued), Marsh,
Spaeder, Baur, Spaeder & Schaaf, Erie,
Pa., for appellee, Michael J. Tronetti.

Mark E. Mioduszewski (argued), Joanna
K. Budde, Knox McLaughlin Gornall &
Sennett, P.C., Erie, Pa., for appellee, Ste-
ven Reilly.

Before STAPLETON, SCIRICA, and
ALITO, Circuit Judges.

OPINION OF THE COURT

ALITO, Circuit Judge:

I.

Paul J. McArdle appeals the dismissal of
his complaint, which alleges federal consti-
tutional and state torts. While serving a
brief term of imprisonment for disorderly
conduct, McArdle was involuntarily com-
mitted to a psychiatric institution. After
his release, he sued a prison doctor and
counsellor for giving false testimony, mak-
ing false diagnoses, and filing a false peti-

tion in order to have him committed. The district court held that the defendants enjoyed absolute immunity because they were functioning as integral parts of the judicial process. 769 F.Supp. 188. We will affirm, although we hold that the defendants were not absolutely immune with respect to some of McArdle's claims.

## II.

These are the relevant facts that were alleged in McArdle's complaint. On November 8, 1990, McArdle, an attorney, was sentenced by Judge Shad Connelly of the Court of Common Pleas of Erie County to serve 90 days in Erie County prison for disorderly conduct. Judge Connelly also ordered that McArdle be given a psychiatric examination by defendant Michael Tronetti, a prison physician. Tronetti, after a brief examination at the county jail, diagnosed McArdle as a paranoid schizophrenic. On November 27, defendant Steven Reilly, a prison counsellor, filed a petition to have McArdle involuntarily committed to a mental health treatment facility. On December 5, a hearing on the petition was held. Tronetti falsely testified that McArdle was suffering from paranoia and schizophrenia and should be committed for treatment to the Warren State Hospital. On December 10, Judge Connelly ordered that McArdle be moved to Warren State Hospital. On December 13, McArdle was taken to Warren State Hospital by the sheriff.

McArdle filed his complaint in the United States District Court for the Western District of Pennsylvania, alleging that Tronetti and Reilly had violated his Fourteenth Amendment due process and equal protection rights by intentionally submitting false diagnoses, giving false testimony, and causing a false commitment petition to be filed in order to bring about his transfer to Warren State Hospital. McArdle also alleged state common law tort claims based on the same facts, including a malicious use of process claim against Reilly for the

"institution of commitment proceedings" against him. Upon motion by the defendants, the district court dismissed McArdle's complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The district court held that under *Briscoe v. LaHue,* 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), and related cases, both defendants had absolute witness and prosecutorial immunity from Section 1983 claims arising out of the facts alleged in the complaint. The court therefore dismissed the complaint under Fed. R.Civ.P. 12(b)(6).[1] McArdle appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## III.

Under 42 U.S.C. § 1983, " '[e]very person' who acts under color of state law to deprive another of a constitutional right shall be answerable to that person in a suit for damages." *Imbler v. Pachtman,* 424 U.S. 409, 417, 96 S.Ct. 984, 988, 47 L.Ed.2d 128 (1976). Despite these broad terms, however, the Supreme Court has held consistently that the Section 1983 did not abolish long-standing common law immunities from and defenses to civil suits. *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 1938, 114 L.Ed.2d 547 (1991). At common law, persons functioning as integral parts of the judicial process enjoyed absolute immunity from civil liability. *Briscoe v. LaHue,* 460 U.S. 325, 335, 103 S.Ct. 1108, 1115, 75 L.Ed.2d 96 (1983). This immunity was and still is considered necessary "to assure that judges, advocates, and witnesses can perform their respective functions without harassment or intimidation." *Butz v. Economou,* 438 U.S. 478, 512, 98 S.Ct. 2894, 2913, 57 L.Ed.2d 895 (1978). Similarly, the Supreme Court has held that persons functioning as integral parts of the judicial process are immune from suits under Section 1983. *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 1938, 114 L.Ed.2d 547 (1991). For example, judges are absolutely

---

1. Since this is an appeal from a dismissal of a complaint under Rule 12(b)(6), our scope of review is plenary, and we must accept as true all facts alleged in the complaint and all reason-able inferences which can be drawn from them. *Markowitz v. Northeast Land Co.,* 906 F.2d 100, 103 (3d Cir.1990).

immune from liability for performing judicial acts, *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); prosecutors have absolute immunity from liability for initiating prosecutions, *Imbler v. Pachtman, supra;* and witnesses have absolute immunity from liability for giving testimony at trial. *Briscoe v. LaHue, supra.*

## IV.

The determinative issue in this case is whether Tronetti and Reilly were functioning as integral parts of the judicial system (and are therefore absolutely immune from liability under Section 1983) when they performed the acts on which McArdle's claims were based. We address each of McArdle's allegations in turn.

First, McArdle alleged that Tronetti violated his due process and equal protection rights by intentionally making a false diagnosis of paranoid schizophrenia. App. at 3–6. Tronetti made his psychiatric examination of McArdle at the request of and furnished a written report of that evaluation to Judge Connelly. App. at 109–111. Tronetti was, therefore, functioning as an arm of the court. As such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects Judge Connelly. *Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967); *Moses v. Parwatikar,* 813 F.2d 891 (8th Cir.), *cert. denied,* 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987); *Bartlett v. Weimer,* 268 F.2d 860 (2nd Cir.), *cert. denied,* 361 U.S. 938, 80 S.Ct. 380, 4 L.Ed.2d 358 (1960). Moreover, Tronetti's report and recommendation to the court, made at the court's direction, constituted testimony protected by absolute witness immunity. *See Gardner v. Parson,* 874 F.2d 131, 146 (3d Cir.1989); *Myers v. Morris,* 810 F.2d 1437, 1466 (8th Cir.), *cert. denied,* 484 U.S. 828, 108 S.Ct. 97, 98 L.Ed.2d 58 (1987).

Second, McArdle alleged that Tronetti and Reilly violated his due process and equal protection rights by committing perjury during the December 5 hearing. App. at 5, 8. McArdle contends that Tronetti and Reilly lied under oath by testifying that McArdle was a paranoid schizophrenic who was a danger to himself and others when they knew such testimony to be untrue. Since witness immunity applies to testimony given at pretrial hearings[2] as well as to trial testimony, *Williams v. Hepting,* 844 F.2d 138, 140–143 (3d Cir.), *cert. denied,* 488 U.S. 851, 109 S.Ct. 135, 102 L.Ed.2d 107 (1988),[3] Tronetti and Reilly are absolutely immune from liability with respect to these allegations as well.

Third, McArdle alleged that Tronetti and Reilly violated his due process and equal protection rights by conspiring to have him falsely diagnosed as a paranoid schizophrenic. App. at 6, 8–9. We agree with the district court and the other circuits that have addressed this issue that if persons are immune from Section 1983 liability for their acts by virtue of their function in the judicial process, they must be immune from Section 1983 liability for conspiring to do those acts. *See, e.g., John v. Barron,* 897 F.2d 1387, 1392 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990); *Moses v. Parwatikar,* 813 F.2d 891 (8th Cir.), *cert. denied,* 484 U.S. 832, 108 S.Ct. 108, 98 L.Ed.2d 67 (1987); *Ashelman v. Pope,* 793 F.2d 1072,

---

**2.** Although not spelled out in the complaint, the December 5 hearing was not before the Court of Common Pleas but before a mental health review officer. The officer recommended commitment, and the court adopted this recommendation. *See* App. at 95–96, 139.

**3.** The Supreme Court has not addressed this issue directly, *Briscoe v. LaHue,* 460 U.S. 325, 329 n. 5, 103 S.Ct. 1108, 1112 n. 5, 75 L.Ed.2d 96 (1983), and there continues to be a split in the circuits. *See, e.g., Daloia v. Rose,* 849 F.2d 74 (2nd Cir.), *cert. denied,* 488 U.S. 898, 109 S.Ct.

242, 102 L.Ed.2d 231 (1988) (witness immunity applies to pretrial adversarial proceedings); *Holt v. Castaneda,* 832 F.2d 123 (9th Cir.1987), *cert. denied,* 485 U.S. 979, 108 S.Ct. 1275, 99 L.Ed.2d 486 (1988) (same); *Anthony v. Baker,* 767 F.2d 657, 663 (10th Cir.1985) (no witness immunity for grand jury testimony). The Supreme Court has held recently, however, that prosecutors are absolutely immune from § 1983 liability for their participation in probable cause hearings. *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), *infra* pp. 1086–87.

1077–1078 (9th Cir.1986); *Dykes v. Hosemann,* 776 F.2d 942, 946 (11th Cir.1985); *Holloway v. Walker,* 765 F.2d 517, 522 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985). Otherwise, judges, prosecutors, witnesses and others "on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid." *Ashelman v. Pope,* 793 F.2d 1072, 1077 (9th Cir.1986).

 Finally, we interpret McArdle's complaint to allege, albeit sketchily, that Reilly violated his constitutional rights by filing the commitment petition and that Tronetti was also involved in this conduct.[4] While the district court did not treat these allegations separately, we find them to be fundamentally different in nature from the other allegations. As discussed above, Tronetti and Reilly are immune for the alleged false testimony, false diagnosis, and conspiracy because those allegations concern their functions as witnesses and officers acting at the court's direction. When Reilly filed the involuntary commitment petition, however, he was functioning neither as a witness nor as an arm of a court; the petition was not the equivalent of testimony offered in court or a written report made at a court's direction. We hold, therefore, that the defendants are not protected by either witness or judicial immunity with respect to the allegations that they were responsible for filing a petition for involuntary commitment which they knew contained lies.

Reilly argues that he is nonetheless protected against these claims by prosecutorial immunity under *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976) and *Burns v. Reed,* — U.S. —, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991). We disagree.

In *Imbler,* the Supreme Court held that state prosecutors, who enjoyed absolute immunity from liability at common law, are absolutely immune from liability under Section 1983 for initiating prosecutions and presenting cases. The Court found such immunity to be based on policy considerations identical to those which underlie judicial immunity. "These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Imbler,* 424 U.S. at 422–423, 96 S.Ct. at 991. *See supra* p. 1084. The Court further explained the need to extend immunity to prosecutors by distinguishing between the burdens that Section 1983 suits would place on prosecutors and the burdens they place on other executive and administrative officials. The Court wrote:

> Frequently acting under serious constraints of time and even information, a prosecutor inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials.

*Imbler,* 424 U.S. at 425–426, 96 S.Ct. at 992–993. As it has with respect to witness and judicial immunity, the Court carefully limited its holding to those prosecutorial functions which are "an integral part of the judicial process," i.e., the initiation of prosecutions and the presentation of cases. *Imbler,* 424 U.S. at 430–431, 96 S.Ct. at 994–996.

In *Burns v. Reed,* — U.S. —, 111 S.Ct. 1934, 114 L.Ed.2d 547 (1991), the Supreme Court held first that prosecutors are absolutely immune from liability for their participation in probable cause hearings, finding that "appearing before a judge and presenting evidence in support of a motion for a search warrant clearly involve the prosecutor's 'role as advocate for the State'" which it had found immune from liability in *Imbler. Burns,* 111 S.Ct. at

---

**4.** With respect to Reilly, *see* paragraphs 13 and 28. App. at 4, 8. With respect to Tronetti, *see* paragraphs 13 and 19. App. at 4, 6.

1942. The Court then answered a question that it had expressly reserved in *Imbler*, i.e., "whether absolute immunity extends to 'those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate.'" *Burns*, 111 S.Ct. at 1939, *quoting Imbler*, 424 U.S. at 430–431, 96 S.Ct. at 995. The Court rejected the argument that giving legal advice to a police officer is related to a prosecutor's case-screening advocate function, explaining that "[a]lmost any action by a prosecutor, including his or her direct participation in purely investigative activity, could be said to be in some way related to the ultimate decision whether to prosecute, but we have never indicated that absolute immunity is that expansive." *Burns*, 111 S.Ct. at 1944. The Court also rejected the government's argument that, as with the initiation of prosecutions, sufficient checks on prosecutorial misconduct already exist. The Court stated that "one of the most important checks, the judicial process, will not necessarily restrain the out-of-court activities of a prosecutor that occur prior to the initiation of a prosecution ..." *Id.* at 1944. The Court held that immunity does not extend to the act by a prosecutor of giving legal advice to a police officer. It found that neither the common law nor policy considerations supported such an extension. In so finding, the Court emphasized that "[a]bsolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation," and that it applies "only for actions that are connected with the prosecutor's role in judicial proceedings, not for every litigation-inducing conduct." *Burns*, 111 S.Ct. at 1943.

In applying these cases to the case before us, we note first and foremost that at common law citizens who were not prosecutors did not enjoy immunity from claims that they maliciously initiated judicial proceedings. On the contrary, the long-standing tort of malicious use of process provided and continues to provide recovery for just those claims. Given the strong historical basis for Section 1983 immunities, it would be anomalous to create a Section 1983 immunity for the malicious filing of a commitment petition by a non-prosecutor in the face of a common law tort that provides recovery for just such a claim.

Second, Reilly has nowhere alleged that the filing of petitions for involuntary commitment was one of his responsibilities as prison counsellor or that the judicial system depended upon him and others in his position to file such petitions. It appears that Reilly had no special authority or responsibility to file such petitions. Instead, his authority apparently rested solely on a statute that authorizes any person to file such petitions.[5] If any person may file such petitions and Reilly had no special duty as prison counsellor to do so, it is self-evident under *Imbler* and *Burns* that Reilly's filing of the petition cannot be considered an integral part of the judicial process warranting absolute immunity.[6]

Moreover, the policy considerations which led the Supreme Court to find absolute prosecutorial immunity for advocate functions and no such immunity for certain administrative and investigative functions dictate that we find no absolute immunity here. As discussed above, the burdens of potential Section 1983 liability on a prosecutor for the initiation of prosecutions are "intolerable" because, among other reasons, a prosecutor is "responsible annually for hundreds of indictments and trials." *Imbler*, 424 U.S. at 425–426, 96 S.Ct. at 993. Those responsibilities necessarily entail substantial reliance on assistant prosecutors and involve decision-making within

---

**5.** The Pennsylvania statute which provides for such petitions, 50 Pa.Stat.Ann. § 7304(a), does not provide any limitations on who may file them.

**6.** The decision in *Meyers v. Contra Costa County Dept. of Soc. Servs.*, 812 F.2d 1154, 1156 (9th Cir.), *cert. denied*, 484 U.S. 829, 108 S.Ct. 98, 98 L.Ed.2d 59 (1987), in which the court found that a social worker was protected by prosecutorial immunity for initiating dependency proceedings, is readily distinguishable. In that case, the defendant's duties as a social worker included the conduct for which Section 1983 liability was alleged, i.e., the initiation and prosecution of dependency petitions in cases of suspected child neglect and abuse.

severe time constraints. A prosecutor simply could not function effectively if every indictment brought the threat of personal liability under Section 1983. Prosecutorial immunity is, therefore, necessary to ensure that a prosecutor's professional judgments are not influenced by fears of personal financial liability. These concerns do not apply in the case before us. Here, Reilly was not responsible for hundreds of filings. On the contrary, it does not seem that his job required him to initiate any such proceedings.

In summary, we hold that the defendants are immune from Section 1983 liability with respect to the claims of false diagnosis, false testimony, and conspiracy.[7] We hold, however, that the defendants are not immune from Section 1983 liability with respect to the filing of the petition for involuntary commitment;[8] however, with respect to these claims, we will still affirm the district court's dismissal of McArdle's complaint for the reasons set forth below.

## V.

■ McArdle's claim with respect to the petition for involuntary commitment amounts to a claim of malicious use of civil process by state actors in violation of his Fourteenth Amendment rights. *See supra* p. 1087. We have held that claims of malicious prosecution brought under Section 1983 "must include the elements of the

common law tort as it has developed." *Rose v. Bartle*, 871 F.2d 331, 349 (3d Cir. 1989); *Lee v. Mihalich*, 847 F.2d 66, 70 (3d Cir.1988). While *Rose* and *Lee* involved malicious criminal prosecutions, we believe that the reasoning of those cases applies equally well to malicious prosecution in the civil context, i.e., malicious use of process. We hold, therefore, that a claim of malicious use of process may state a Section 1983 claim if it includes the elements of that common law tort as it has developed.

The elements of the common law tort of malicious use of civil process are similar in most jurisdictions and under the Pennsylvania statute codifying this tort, a defendant may not be found liable unless:

(1) He act[ed] in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

42 Pa.Cons.Stat.Ann. § 8351. *See also, e.g., Penwag Property Co., Inc. v. Landau,* 76 N.J. 595, 388 A.2d 1265 (1978); *Nix v. Sawyer,* 466 A.2d 407, 411 (Del.Super.Ct.1983); Restatement (Second) of Torts § 674 (1976); W. Page Keeton et al., *Prosser and Keeton on Torts* §§ 119, 120 (5th ed. 1984). Accordingly, we must de-

---

**7.** The district court opined that McArdle might have an Eighth Amendment claim based on the facts alleged, but the court held that the complaint did not assert any such claim. We agree with this disposition. McArdle's complaint contains no reference, direct or implied, to the Eighth Amendment. Contrary to McArdle's argument on appeal, a bare reference to the Fourteenth Amendment's Due Process Clause is not enough to plead a violation of any provision of the Bill of Rights made applicable to the states under that clause. We also note that while claims of "deliberate indifference to serious medical needs of prisoners" state violations of the Eighth Amendment and, therefore, causes of action under Section 1983, *Estelle v. Gamble,* 429 U.S. 97, 104–105, 97 S.Ct. 285, 291–292, 50 L.Ed.2d 251 (1976), McArdle has nowhere in the case before us alleged that while in custody he had serious medical needs which were deliberately ignored by Tronetti. McArdle did allege that Tronetti, with deliberate indifference to his

good mental health, pressured him to take Prolixin, an antipsychotic drug with strong adverse side effects. However, McArdle consistently refused to take the medication and was never forced to do so.

**8.** The defendants are also not protected by any qualified immunity from this claim. Government officials performing discretionary functions are generally provided "with a qualified immunity, shielding them from civil damage liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987). Under this standard, there can be no such immunity when it is alleged that government officials *intentionally* filed and conspired to file a false petition in order to have a person they knew to be in good mental health involuntarily committed to a psychiatric institution.

termine whether McArdle's complaint alleges these elements.

We have recently held that Section 1983 claims must be pled with specificity. *Colburn v. Upper Darby Township*, 838 F.2d 663, 666 (3d Cir.), *cert. denied.*, 489 U.S. 1065, 109 S.Ct. 1338, 103 L.Ed.2d 808 (1988). While we also construe pro se pleadings more generously and McArdle is appearing pro se, McArdle is a practicing attorney and a member of the bar of this court. In any event, even the most generous interpretation cannot make out all of the elements of the tort of abuse of process in the counts of the complaint alleging that Reilly and Tronetti violated McArdle's constitutional rights. In particular, we find no allegation that the involuntary commitment proceeding terminated in McArdle's favor. On the contrary, the complaint alleges that the Court of Common Pleas ordered McArdle's commitment and contains no allegation that this determination was subsequently reversed. The last event-set out in the complaint was McArdle's transportation to Warren State Hospital by the sheriff on December 13, 1990, three days after the entry of the commitment order. Even count seven of the amended complaint, which sets out a pendent claim for abuse of process, lacks any allegation that the commitment proceedings terminated in McArdle's favor under any theory. Thus, McArdle's Section 1983 abuse of process allegations are plainly deficient.

In an affidavit filed after the defendants moved to dismiss, McArdle set out additional facts not contained in the complaint. He stated that on January 3, 1991, he was removed from Warren State Hospital and taken back to the prison because he did not need psychiatric treatment. He further stated that he was paroled from the prison that same day. While these facts might be used in constructing a theory that the commitment proceeding ultimately terminated in McArdle's favor, the complaint does not contain any of the facts—including discharge from the hospital and parole—on which such a theory would have to be built. It does not appear that McArdle sought

leave to amend the complaint to remedy these defects even after they were pointed out in Reilly's motion to dismiss the pendent abuse of process claim, and these defects in the complaint clearly could not be remedied by the affidavit. *Festa v. Local 3 Int'l Bhd. of Elec. Workers*, 905 F.2d 35, 37 (2nd Cir.1990). *See Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir.1988). We must therefore affirm the dismissal of McArdle's Section 1983 abuse of process claims for failure to allege an essential element of this constitutional tort.

## VI.

For the reasons stated above, we will affirm the judgment of the district court.[9]

---

**9.** We do not at all address the pendent state claims alleged by McArdle.