John C. WILLIAMS, Plaintiff,

v.

Andrew CONSOVOY, et al., Defendants.

Civil Action No. 01–1809 (MLC).

United States District Court,
D. New Jersey.

July 29, 2004.

Stephen M. Latimer, Loughlin & Latimer, Hackensack, NJ, for Plaintiff.

Daniel R. Esposito, Kalison, McBride, Jackson & Murphy, P.A., Warren, NJ, for Defendants Don E. Gibbons.

**MEMORANDUM OPINION**

COOPER, District Judge.

This matter comes before the Court on the motion by defendant Don E. Gibbons ("Gibbons") pursuant to Federal Rule of Civil Procedure ("Rule") 56 for summary judgment dismissing the complaint as asserted against him. Gibbons argues there are no material facts in dispute, and that he is entitled to judgment as a matter of law on plaintiff John C. Williams's ("Williams") claim under 42 U.S.C. § ("Section") 1983. Because Gibbons is entitled to absolute immunity from Section 1983 liability, the motion will be granted.

## BACKGROUND

The following facts are undisputed. This case arises out of plaintiff's parole proceedings in 1998 and 1999. The New Jersey State Parole Board ("the Parole Board") considered Williams's parole eligibility in April 1998. (Latimer Cert., Ex. G.) A hearing officer conducted a case assessment in May 1998, and referred the case to a two-member panel of the Parole Board ("the Adult Panel"). (*Id.*, Ex. H.) Prior to holding a hearing to determine whether to parole Williams, the Adult Panel ordered an in-depth psychological evaluation of him. (*Id.*, Ex. N at 14–16.)

Williams's evaluation was conducted by Gibbons, a licensed psychologist, in August 1998. (*Id.*, Ex. I.) Gibbons was not at the time a New Jersey state employee; rather, he worked for Correctional Behavior Solutions, a private company that was contracted by the state to provide psychological services in New Jersey prisons. (*Id.*, Ex. Q at 14–15.) Gibbons reported his findings to the Adult Panel. (*Id.*, Ex. I.) The Adult Panel, relying in part on Gibbons's report, denied parole. (*Id.*, Ex. J.) The denial was eventually reversed on appeal by the New Jersey Superior Court, Appellate Division. *Williams v. N.J. State Parole Bd.*, 336 N.J.Super. 1, 763 A.2d 747 (N.J.Super.Ct.App.Div.2000).

Williams brought suit against, among others, Gibbons on April 18, 2001. (Docket entry 1.) He alleges that Gibbons's evaluation of him and subsequent report to the Adult Panel violated his Eighth Amendment right to be free from cruel and unusual punishment. Specifically, he claims that Gibbons's deliberate indifference to his rights caused his parole to be wrongfully denied, which in turn led to him being incarcerated for longer than he should have been. (Pl. Br. at 23–27.)[1]

## DISCUSSION

### I. Summary Judgment Standard

A court may grant a motion for summary judgment

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.P. 56(c). The summary judgment movant must show initially that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the movant has met that initial burden, the nonmovant must present evidence establishing that a genuine issue of material fact exists, making it necessary to resolve the difference at trial. *Id.* at 324, 106 S.Ct. 2548; *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The nonmovant, rather than rely on mere allegations, must present actual evidence raising a genuine issue of material fact. *Anderson v. Liberty Lobby*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

A court must view the evidence in the light most favorable to the nonmovant when deciding a summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The judge's role at the summary judgment stage is not to weigh evidence, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. "By its very terms, this standard provides that the mere existence of

---

1. Because we hold, *infra,* that Gibbons is absolutely immune to Section 1983 liability, we need not address whether plaintiff's allegations state a constitutional violation.

*some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247–48, 106 S.Ct. 2505. A fact is material only if it might affect the action's outcome under governing law. *Id.* at 248, 106 S.Ct. 2505.

## II. *Section 1983 and Absolute Immunity*

Section 1983 states:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress.

"By its own terms, the statute does not create substantive rights. Instead, it only provides remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 477 (3d Cir. 2003).

Section 1983 makes no mention of immunities. Nevertheless, "[i]f an official was accorded immunity from tort actions at common law when [Section 1983] was enacted in 1871," that official enjoys absolute immunity from Section 1983 actions today. *Malley v. Briggs*, 475 U.S. 335, 340, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (quotations and citations omitted). Further, "[e]ven if an official did not enjoy absolute immunity at common law, she may still be entitled to immunity if she performs 'special functions' that are similar or analogous to functions that would have been immune when Congress enacted § 1983." *Hughes v. Long*, 242 F.3d 121, 125 (3d Cir.2001) (citing *Butz v. Economou*, 438 U.S. 478, 506, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978)). Whether such an official is immune to a Section 1983 action depends on "the nature of the function performed, not the identity of the actor who performed it and evaluates the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that function." *Id.* (citing *Forrester v. White*, 484 U.S. 219, 224, 108 S.Ct. 538, 98 L.Ed.2d 555 (1988)).

Various individuals acting under color of state law are absolutely immune to suit under Section 1983. These include: judges, for actions taken in their judicial capacities, *Stump v. Sparkman*, 435 U.S. 349, 356–57, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978); witnesses, for statements made in testimony, *Briscoe v. LaHue*, 460 U.S. 325, 341, 345–46, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983); prosecutors, for actions that are "intimately associated with the judicial process," *Imbler v. Pachtman*, 424 U.S. 409, 430, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); and social workers, for actions involving the initiation and prosecution of child custody or dependency proceedings. *Ernst v. Child & Youth Servs.*, 108 F.3d 486, 495–96 (3d Cir.1997).

■ Two categories of defendants who enjoy absolute immunity are pertinent to this case. First, probation officers and parole officers are entitled to absolute "quasi-judicial" immunity for actions taken in their adjudicatory capacities. This immunity does not, however, extend to actions taken in the officers' executive or administrative capacities. *Wilson v. Rackmill*, 878 F.2d 772, 775 (3d Cir.1989); *Harper v. Jeffries*, 808 F.2d 281, 284 (3d Cir. 1986); *Thompson v. Burke*, 556 F.2d 231, 236 (3d Cir.1977). The line between actions taken in an adjudicatory capacity

rather than in an executive or an administrative one is not always clear. *Simon v. Ward,* No. 99–1554, 2001 WL 41127, at *2 (E.D.Pa. Jan. 16, 2001) ("The Court of Appeals for the Third Circuit has labored mightily to define the distinction between judicial acts and executive/ministerial acts."). Nonetheless, "the court of appeals has held in the parole board context that hearing evidence; making recommendations as to whether to parole a prisoner; and making decisions to grant, revoke or deny parole are adjudicatory acts for which the actor is entitled to absolute immunity." *Id.* at *3 (citing *Wilson,* 878 F.2d at 776, and *Harper,* 808 F.2d at 284).[2]

A second line of cases pertinent to this action teaches that professionals who conduct court-ordered evaluations on parties to litigation are absolutely immune to Section 1983 liability. In *McArdle v. Tronetti,* 961 F.2d 1083 (3d Cir.1992), a prison doctor, Tronetti, was sued under Section 1983 for, *inter alia,* making "false diagnoses" of the plaintiff, McArdle. *Id.* at 1083–84. Following McArdle's arrest on a disorderly conduct charge, a state court judge had ordered Tronetti to give McArdle a psychiatric examination. *Id.* Tronetti diagnosed McArdle as a paranoid schizophrenic, thereby causing McArdle to be committed to a state hospital. *Id.* at 1084. When McArdle subsequently sued Tronetti, the Third Circuit held that Tronetti was absolutely immune to Section 1983 liability:

> McArdle alleged that Tronetti violated his [constitutional] rights by making a false diagnosis of paranoid schizophrenia. Tronetti made his psychiatric examination of McArdle at the request of and furnished a written report of that evaluation to Judge Connelly. Tronetti was, therefore, functioning as an arm of the court. As such, he was an integral part of the judicial process and is protected by the same absolute judicial immunity that protects Judge Connelly.

*Id.* at 1085 (citations omitted). *See also Morstad v. Dep't of Corr. & Rehab.,* 147 F.3d 741, 744 (8th Cir.1998) (prison psychologist ordered by court to evaluate probationer in connection with probation revocation proceeding absolutely immune to Section 1983 liability); *Yates v. Cunningham,* 70 F.Supp.2d 47, 51–52 (D.N.H.1999) (prison mental health counselor ordered by court to interview prisoner in connection with motion to suspend sentence absolutely immune to Section 1983 liability).

*McArdle,* which concerned a prison doctor who was a state employee, has been extended to private professionals acting at the behest of courts. For example, in *Pierson v. Members of Delaware County, Pennsylvania, Council,* No. 99–3935, 2000 WL 486608 (E.D.Pa. Apr. 25, 2000), a pri-

---

**2.** Examples of executive or administrative actions include:

> (1) investigating allegations of parole violations; (2) typing a warrant application for the arrest of the parolee and signing the warrant; (3) assisting the police in initiating a criminal investigation against the parolee; (4) providing false information that a parolee violated the terms of parole in order to obtain a parole violation arrest warrant; (5) falsely informing the parole board that the parolee had been arrested on new criminal charges; (6) charging the parolee with wrongdoing and presenting evidence to that effect; (7) performing the "general

responsibilities" of a parole or probation officer; (8) a parole board member's meeting with and interviewing a parolee concerning an alleged parole violation, and presenting information to the parole board which resulted in the board's decision to revoke parole based on a technical parole violation; and (9) conducting a warrantless search of a parolee's residence without probable cause.

*Friedland v. Fauver,* 6 F.Supp.2d 292, 304–05 (D.N.J.1998) (footnotes and citations omitted), *disagreed with on other grounds by Learner v. Fauver,* 288 F.3d 532, 542 & n. 7 (3d Cir.2002).

vate psychiatrist who was ordered to examine a criminal defendant to determine if he was competent to stand trial was held immune to Section 1983 liability. *Id.* at \*4 & nn. 23 & 24. The court observed:

> Dr. Wiesner made his evaluation of Pierson at the request of the court, and his report was furnished to the court. Dr. Wiesner was thus functioning as an arm of the court, and as a[n] integral part of the judicial process he is protected by the same judicial immunity that protects the judge who requested the evaluation.

*Id.* at \*4 (citing *McArdle*, 961 F.2d at 1085). Wiesner's status as a private doctor, rather than being state-employed, did not undermine his claim of immunity; to the contrary, "that Wiesner is a private physician working solely at the behest of the court would seem to place him even more soundly under the umbrella of judicial immunity than the [prison] physician in *McArdle*." *Id.* at \*4 n. 23.

The Third Circuit reached the same conclusion in *Hughes*. There, the plaintiff, Hughes, sued a private social worker, Long, and a private psychologist, McHugh, under Section 1983. 242 F.3d at 123. Long and McHugh had been ordered to conduct evaluations of Hughes by a state court judge in connection with a child-custody dispute between Hughes and his former wife. *Id.* The Third Circuit held that "Long and McHugh enjoy *judicial* immunity because they acted as 'arms of the court,' similar to ... a court-appointed doctor or psychologist, a non-judicial person who fulfills a quasi-judicial role at the court's request." *Id.* at 126.

3. The Parole Board is authorized by statute to order preparole psychological examinations. N.J.S.A. § 30:4–123.52(d).

4. Gibbons testified in his deposition that his reports do not make explicit recommendations as to whether to parole a prisoner; he simply does an evaluation, and reports his

## III. *Plaintiff's Section 1983 Claim Against Gibbons*

Gibbons, at the time he examined Williams, was a private psychologist. He was ordered by a panel of the Parole Board to evaluate Williams and make a report. He complied with those directives, and as a result is now being sued by Williams. These facts are not in dispute. Accordingly, the Court can determine as a matter of law whether Gibbons is entitled to absolute immunity from Section 1983 liability.

■ This issue is apparently a novel one. We have uncovered no reported cases addressing whether a private actor who conducts a psychological evaluation of a parole candidate on the order of a parole board is immune to suit. Nevertheless, applying the principles outlined *supra*, we hold that Gibbons is absolutely immune to Section 1983 liability.

The first issue is whether Gibbons was engaged in a function that is immune from suit. As discussed *supra*, parole officials enjoy absolute immunity for their adjudicative actions. Gibbons examined Williams at the request of the Adult Panel of the Parole Board. The Adult Panel ordered him to conduct an in-depth psychological examination in order to assist it in making its parole determination. (*See* Latimer Cert., Ex. N at 22–23, 38–42.)[3] Examining a prisoner for this purpose is akin to "making recommendations as to whether to parole a prisoner," which is an adjudicative act. *See Simon*, 2001 WL 41127, at \*3.[4] Further, the same activity in

findings. (Latimer Cert., Ex. Q at 21, 28–29.) Nevertheless, the Parole Board relies on reports like his to help it determine whether to grant or deny parole. (*Id.*, Ex. N at 22–23, 38–42.) It is the function the state actor performs, rather than his or her subjective intent in carrying that function out, that de-

which Gibbons engaged has been deemed adjudicative when ordered by a court. *See, e.g., Morstad,* 147 F.3d at 744 (doctor ordered by court to evaluate probationer was "performing functions essential to the judicial process"); *McArdle,* 961 F.2d at 1085 (doctor ordered by court to diagnose defendant's mental condition was "functioning as an arm of the court"); *Pierson,* 2000 WL 486608, at \*4 (doctor ordered by court to assess defendant's competence to stand trial was engaged in adjudicative act). We see no reason why this type of conduct is not also adjudicative when requested by a quasi-judicial body such as the Parole Board. Accordingly, we hold that conducting a psychological assessment at the behest of the Parole Board is an adjudicative act that entitles a parole officer to absolute immunity.[5]

Gibbons, of course, is not a parole officer; rather, at the time he evaluated Williams he was a private psychologist. This distinction should not disqualify him from absolute immunity, however. As discussed *supra,* private doctors and social workers are immune to Section 1983 liability for conducting court-ordered evaluations of litigants. The Parole Board is a quasi-judicial body, *see Thompson,* 556 F.2d at 238 n. 13, and its members are entitled to the same immunity for their adjudicative acts that judges receive for acts taken in their judicial capacities. *See supra.* What principle, then, separates Gibbons from the private defendants who were held absolutely immune in *Hughes* and *Pierson?* We can discern none. In both contexts, an immune official orders a private actor to evaluate a party to a proceeding. In both cases, the private professional acts as an arm of the immune official, rather than on his own initiative. Accordingly, we hold that a private psychologist who is ordered by the Parole Board to conduct a psychological examination of a candidate for parole is absolutely immune to Section 1983 claims arising out of that examination.[6]

### CONCLUSION

Gibbons moves for summary judgment dismissing the Section 1983 complaint as asserted against him. We have held that there are no material facts in dispute, and that Gibbons is entitled to judgment as matter of law because he is absolutely immune to Section 1983 liability. An appropriate Order and Judgment will accompany this Memorandum Opinion.

---

termines whether the individual is entitled to absolute immunity. *See Hughes,* 242 F.3d at 125.

5. In an oral decision at a prior stage of this litigation, the Third Circuit held that "[o]rdering a psychological profile" is "judicial in character," and therefore the court held the members of the Adult Panel immune to Section 1983 liability. (11–5–02 3d Cir. Bench Op.) If the members of the Adult Panel cannot be sued for ordering the evaluation, then it is logical that the official who carries out their orders should be similarly immune. *Cf. Pierson,* 2000 WL 486608, at \*4 (holding that private doctor who assessed defendant's mental competence on order of court "is protected by the same judicial immunity that protects the judge who requested the evaluation").

6. There are also policy considerations that counsel in favor of shielding from Section 1983 liability doctors who are ordered by parole authorities to evaluate prisoners' mental states. We are cognizant, however, that courts "do not have a license to establish immunities from § 1983 actions in the interests of what [they] judge to be sound public policy." *Buckley v. Fitzsimmons,* 509 U.S. 259, 278, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (quotations and citations omitted). *See also Hughes,* 242 F.3d at 127 n. 3. Therefore, we do not address those policy considerations here.