

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-3-2007

# Light v. Haws

Precedential or Non-Precedential: Precedential

Docket No. 05-4516

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Light v. Haws" (2007). *2007 Decisions.* Paper 1711.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1711

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-4516

———

JOHN D. LIGHT

v.

CHARLES B. HAWS; ROBERT BELFONTI;
TONY RATHFON; STEVE BARTUS, all individually;
SECRETARY OF THE DEPARTMENT OF
ENVIRONMENTAL
PROTECTION; GOVERNOR OF PENNSYLVANIA,
in their official capacities only,
                                              Appellants

———

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 03-cv-00725)
District Judge:  Honorable Christopher C. Conner

———

Submitted Under Third Circuit LAR 34.1(a)
November 6, 2006

Before:  SLOVITER, CHAGARES and NYGAARD,
Circuit Judges

(Filed   January 3, 2007)

———

Michael L. Harvey
Office of Attorney General of Pennsylvania
Department of Justice
Harrisburg, PA 17l20

     Attorney for Appellants

Donald A. Bailey
Bailey & Ostrowski
Harrisburg, PA 17l10

      Attorney for Appellee

OPINION OF THE COURT


SLOVITER, Circuit Judge.

      Before us is an appeal by Charles B. Haws, Assistant Counsel for the Pennsylvania Department of Environmental Protection ("DEP"), from the order of the District Court denying his motion for summary judgment on the ground of absolute prosecutorial immunity in this action brought pursuant to the Civil Rights Act, 42 U.S.C. § 1983. Light v. Haws, No. 03-cv-0725, 2005 WL 2230026 (M.D. Pa. Sept. 13, 2005). Plaintiff, John D. Light, is a former farmer and businessman who owns and operates almost 200 apartment units throughout south-central Pennsylvania.

I.

      The dispute arises out of actions taken by the DEP following complaints by neighbors and reports from its own investigators with respect to Light's maintenance of a large variety of assorted material and furnishings within and outside the garage and barn of his farm in Lebanon County. The District Court noted that the material observed on the property included "trucks, tractors, log skidders, and farming equipment," as well as "[c]onstruction waste, farming supplies, several thousand stacked tires, and piles of scrap metal overgrown with brush[.]" Id. at *1-2.

      Following discovery, Haws and the other defendants,

2

Robert Belfonti, Tony Rathfon, and Steve Bartus,[1] all of whom are employees of the DEP, the Secretary of the DEP, and the Governor of Pennsylvania, filed a motion for summary judgment. The District Court granted the motion in favor of defendants on Light's claims that the Pennsylvania Solid Waste Management Act, 35 Pa. Stat. Ann. § 6018.101 et seq., is unconstitutionally vague and that the actions of the Governor and the Secretary of the DEP violated the state constitution. The District Court denied the remainder of the defendants' motion for summary judgment. Only Haws appeals, as the denial of a claim of absolute immunity, to the extent it raises questions of law, may be the subject of an interlocutory appeal. See Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). On a pre-trial denial of immunity, "we review the legal issues in light of the facts that the District Court determined had sufficient evidentiary support for summary judgment purposes." Hamilton v. Leavy, 322 F.3d 776, 782 (3d Cir. 2003).

In this case, consideration of the facts is difficult because they have not been presented by the parties in a coherent manner and because some of the relevant facts are contested. It is apparent, however, that following the complaints about material on Light's property, DEP investigator Robert Belfonti inspected the property and issued a compliance order on November 20, 2001 for violations found on the property. Light's administrative appeal of that order was dismissed for failure to comply with discovery orders during his prosecution of the appeal. Because Light never sought a supersedeas, Haws began enforcement proceedings against Light by filing a petition to enforce the November 20, 2001 order in the Commonwealth Court.

Following a hearing, that court found Light in violation of the November 20, 2001 order and, by order dated April 16, 2002, directed that he comply with the November 20, 2001 order within ninety days. Light failed to comply with the April 16,

---

[1] The District Court used the spellings "Belfanti" and "Bartos."

3

2002 order and Haws filed a petition for contempt. On September 19, 2002, the Commonwealth Court held a hearing on the contempt petition and deferred ruling on the condition that Light comply with the April 16, 2002 order. In an order issued that same day, the Court directed the DEP to monitor Light's compliance, and "apply forthwith to the Court for an order of contempt" if Light failed to comply with the order. App. at 246-47.

Light alleges that after the end of the hearing, his counsel showed Haws a copy of a federal civil rights complaint that Light was prepared to file that afternoon. According to Light, Haws angrily told him in response that "[W]hat goes around comes around[. I]f you think you've been harassed before, you wait to see what we do now." App. at 49 (Am. Compl. ¶ 51). Light further asserts that when he and his counsel complained that this was a threat and that "it was unlawful for DEP to threaten retaliation in this manner, [Haws] aggressively offered that 'it isn't a threat – it's a promise.'" Id. at ¶ 51. Light alleges he was "extremely frightened" by this encounter, and deferred filing the complaint in an attempt to avoid conflict with the DEP. Id. at ¶ 54.

Light also alleges that on two separate occasions following the September 19, 2002 hearing, Haws and Belfonti visited his property. The record does not establish either when these visits took place or their purpose although Light asserts in the Amended Complaint that "the only purpose of [one of the alleged visits] was to display [Haws'] power and to intimidate [Light.]" Id. at ¶ 55. Light's affidavit discusses an undated "walk through" of his property that occurred at some point with Judge Pellegrini, at which Haws was present. App. at 289. Haws' declaration states that he has "entered Mr. Light's property solely for the purpose of preparing for Commonwealth Court hearings or when accompanied by the Judge presiding over those hearings." App. at 73.

On March 30, 2003, Haws filed a second petition for contempt regarding Light's failure to comply with the April 16, 2002 and September 19, 2002 orders. Between August 2003 and

4

January 2004, the Court found Light in contempt of its orders multiple times on the basis of several non-compliance certifications Haws filed with the Court based on inspection of the property by DEP personnel. The Court found that Light had failed to purge his contempt and directed that Light be confined nightly in Lebanon County Prison between January and April 2004. On January 25, 2005, following a status conference, Haws filed a certificate of compliance in the Commonwealth Court and requested that the matter be marked closed on that date.

Light filed his § 1983 action in the United States District Court for the Middle District of Pennsylvania in April 2003. In his Amended Complaint he charges that Haws violated his Fourth Amendment right to be free from warrantless searches and retaliated against him in violation of the First Amendment when he issued the courtroom threat in response to Light's federal civil rights complaint. See App. at 47, 49 (Am. Compl. ¶¶ 43, 54). Light also claims that Haws selectively enforced the Commonwealth's environmental laws against him, set "perjury traps" for him, sought harsher penalties, and manipulated and misled the Commonwealth Court. App. at 46-50 (Am. Compl. ¶¶ 41, 42, 46, 56, 57). As noted earlier, the only issue before us is whether Haws is entitled to absolute prosecutorial immunity.

II.

"Most public officials are entitled only to qualified immunity" from Section 1983 actions. Yarris v. County of Delaware, 465 F.3d 129, 135 (3d Cir. 2006); Buckley v. Fitzsimmons, 509 U.S. 259, 273 (1993) (ordinarily, "[q]ualified immunity represents the norm") (internal quotation marks and citations omitted). Nonetheless, in Imbler v. Pachtman, 424 U.S. 409 (1976), the Supreme Court held that, in light of the immunity historically accorded prosecutors at common law, state prosecutors are absolutely immune from liability under § 1983 for actions performed in a quasi-judicial role. Id. at 427, 431. This protection is "not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself." Kalina v.

Fletcher, 522 U.S. 118, 127 (1997) (internal quotation marks and citations omitted).

This court has since amplified that "participation in court proceedings and other conduct intimately associated with the judicial phases of litigation" are "actions performed in a quasi-judicial role." Carter v. City of Philadelphia, 181 F.3d 339, 356 (3d Cir. 1999) (internal quotation marks and citations omitted). We have given as other examples of prosecutorial actions that warrant absolute immunity, "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State[.]" Yarris, 465 F.3d at 135 (internal quotation marks and citations omitted); McArdle v. Tronetti, 961 F.2d 1083, 1085 (3d Cir. 1992) (holding that prison physician and prison counselor were absolutely immune as to their testimony in court and psychiatric reports to the judge, as that was an "integral part of the judicial process").

The burden to establish prosecutorial immunity is on the prosecutor. Haws argues that the District Court erred by focusing solely on his alleged courtroom threat to Light rather than considering separately each of Haws' actions "as a prosecutor." Appellant's Br. at 11. Moreover, Haws asserts that his comments to Light in the courtroom also fall within the scope of prosecutorial immunity.

Both parties treat Haws, an assistant DEP counsel, as a prosecutor in the classic sense. Although Haws, as counsel to an administrative agency, is not in precisely the same position as a district attorney, his authority includes, inter alia, filing actions to enforce compliance with court orders. In that capacity, he functions as a prosecutor.

Courts are obligated to take a functional approach to questions of absolute immunity, and should focus on "the nature of the function performed, not the identity of the actor who performed it and evaluate[ ] the effect that exposure to particular forms of liability would likely have on the appropriate exercise of that function." Hughes v. Long, 242 F.3d 121, 125 (3d Cir.

6

2001); <u>Larsen v. Senate of Commonwealth of Pa.</u>, 152 F.3d 240, 249 (3d Cir. 1998) (examining legislative immunity and noting that "[t]he Supreme Court has adopted a functional approach to immunity issues . . . turn[ing] on the nature of the act. Therefore, to determine whether a particular immunity is appropriate, we must look to the interests behind it, remaining mindful that it is the interest in protecting the proper functioning of the office, rather than the interest in protecting its occupant, that is of primary importance.") (internal quotation marks and citations omitted); <u>see also</u> <u>Forsyth v. Kleindienst</u>, 599 F.2d 1203, 1212-13 (3d Cir. 1979) (noting that the "Supreme Court in <u>Butz</u>[v. Economou, 438 U.S. 478 (1978)] and <u>Imbler</u> intended a functional test rather than one based on status or title.  <u>Butz</u> particularly stressed the need to make an inquiry into the particular decision challenged to determine whether an official is entitled to absolute immunity.") (footnote omitted).

Haws functioned as the Department of Environmental Protection's advocate in bringing the initial civil action in the Commonwealth Court for compliance with the DEP's order, and in the subsequent civil petitions for contempt.  35 Pa. Stat. Ann. § 6018.104 (10), (11) (2006) (authorizing the DEP to institute civil proceedings to compel compliance, as well as to initiate "prosecutions against any person or municipality under this act").

In <u>Butz</u>, the Supreme Court held that:

The decision to initiate administrative proceedings against an individual or corporation is very much like the prosecutor's decision to initiate or move forward with a criminal prosecution.  An agency official, like a prosecutor, may have broad discretion in deciding whether a proceeding should be brought and what sanctions should be sought. . . .

The discretion which executive officials exercise with respect to the initiation of administrative proceedings might be distorted if their immunity from damages arising from that decision was less than

7

complete . . . .

       . . . .

We believe that agency officials must make the decision to move forward with an administrative proceeding free from intimidation or harassment. Because the legal remedies already available to the defendant in such a proceeding provide sufficient checks on agency zeal, we hold that those officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision.

Id. at 515-16; see also Forrester v. White, 484 U.S. 219, 224 (1988) ("Under [the functional] approach, we examine the nature of the functions with which a particular official or class of officials has been lawfully entrusted, and we seek to evaluate the effect that exposure to particular forms of liability would likely have on the appropriate exercise of those functions."); Ernst v. Child & Youth Servs. of Chester County, 108 F.3d 486, 495 (3d Cir. 1997) (applying functional analysis and concluding that child welfare workers "are entitled to absolute immunity for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings"); Schrob v. Catterson, 948 F.2d 1402, 1411 (3d Cir. 1991) (noting Butz holding and concluding that "absolute immunity is extended to officials when their duties are functionally analogous to those of a prosecutor's, regardless of whether those duties are performed in the course of a civil or criminal action").

A meticulous analysis of Haws' actions and functions on behalf of the DEP is necessary before a determination can be made whether absolute immunity should attach to any of Light's challenges. The District Court only addressed whether Haws' alleged threat to Light following the September 19, 2002 hearing warrants absolute immunity. The District Court held that Haws' actions as alleged "did not take place during 'an integral part of the judicial process.'" Light, 2005 WL 2230026, at *7 (quoting McArdle, 961 F.2d at 1085). Instead it stated that "Haws's

alleged threats were made during a private conversation with Light and his counsel." Id. We do not disagree at this stage of the proceeding, although we do not preclude an ultimate decision that Haws may be entitled to qualified, or even absolute immunity, because his statements, at most, suggested further prosecution. See McGruder v. Necaise, 733 F.2d 1146, 1148 (5th Cir. 1984) ("These defendants allegedly used their prosecutorial powers to threaten McGruder into dismissing his damages suit. McGruder therefore argues that their activities were not those of a prosecutor seeking to punish and deter crime, but of an agent of the county seeking to intimidate a citizen in his exercise of constitutional rights. Such a motivation would be reprehensible and such threats abhorrent, but they do not lift the decision to maintain a criminal prosecution from the prosecutorial activities protected by Imbler.").

Light also charges that Haws retaliated against him by filing "manipulat[ed]" contempt petitions against him and subjecting him to "expensive harassing litigation." App. at 50, 47 (Am. Compl. ¶¶ 56, 41). Haws' actions in bringing any of the civil petitions against Light, by contrast, are precisely the type of actions that absolute immunity is designed to protect. Haws was acting as an advocate for the state in that connection, which included authority to pursue DEP compliance actions. Cf. McArdle, 961 F.2d at 1087 (prison counselor not entitled to absolute immunity for filing a petition for involuntary commitment, because he had "no special authority or responsibility to file such petitions" outside of that of the public at large).

Even if Haws' statements or actions were malicious, as Light suggests, Haws' motivation in bringing any of these actions is irrelevant to the absolute immunity analysis. Kulwicki v. Dawson, 969 F.2d 1454, 1464 (3d Cir. 1992) ("Consideration of personal motives is directly at odds with the Supreme Court's simple functional analysis of prosecutorial immunity . . . . The Court has explicitly stated that even groundless charges are protected, in the interest of maintaining vigorous prosecution of crime."); see also Bernard v. County of Suffolk, 356 F.3d 495, 498 (2d Cir. 2004) ("[A]s long as a prosecutor acts with

9

colorable authority, absolute immunity shields his performance of advocative functions regardless of motivation.").

Light further alleges that Haws subsequently made good on his threat by visiting his property in order to "display his power and to intimidate [him]." App. at 49-50. There is record evidence that at least one of Haws' visits apparently occurred in the presence of Judge Pellegrini at a walk-through ordered by the judge. If this occurred, it could have been an action taken in the context of the litigation, and hence entitled to absolute immunity. On the other hand, on at least one visit Haws may have functioned as a DEP investigator, when he, along with Belfonti, examined whether Light had disposed of waste or complied with the DEP's order. "When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." Kalina v. Fletcher, 522 U.S. 118, 126 (1997) (internal quotation marks and citations omitted). Moreover, in his own declaration, Haws explained how continued inspections "of Mr. Light's property by Department personnel" influenced his various decisions to bring continued noncompliance actions against Light. App. at 71. The District Court made no analysis of whether absolute immunity attached to Haws' subsequent visits to Light's property. It is unclear on this state of the record what role Haws' own investigatory inspections, if any, played in this decision-making process.

Courts have noted "the gray areas between prosecutorial and investigative activity." Schrob, 948 F.2d at 1414. In Imbler v. Pachtman, 424 U.S. 409, 419 n.13 (1976), the Supreme Court stated that "[t]he procedural difference between the absolute and the qualified immunities is important. An absolute immunity defeats a suit at the outset, so long as the official's actions were within the scope of the immunity. The fate of an official with qualified immunity depends upon the circumstances and motivations of his actions, as established by the evidence. . . ."; see Schrob, 948 F.2d at 1407 n.5 ("[A]n official with qualified immunity must establish that the[ ] conduct does not violate clearly established statutory or constitutional rights of which a

10

reasonable person would have known.") (internal quotation marks and citations omitted).

Haws, who advanced his absolute immunity defense at the summary judgment stage, had the burden to demonstrate that absolute immunity should attach to each act he allegedly committed that gave rise to a cause of action. "[T]he official seeking absolute immunity bears the burden of showing that such immunity is justified for the function in question." Burns v. Reed, 500 U.S. 478, 486 (1991) ("The presumption is that qualified rather than absolute immunity is sufficient . . . . We have been quite sparing in our recognition of absolute immunity[.]") (internal quotation marks and citations omitted); see also Forsyth, 599 F.2d at 1212 (reading Butz as "placing a heavy burden on . . . defendants to demonstrate a need for protection greater than that provided by qualified immunity").

The District Court noted that Haws failed to comply with Local Rule 56.1 in presenting evidence in connection with his summary judgment motion. 2005 WL 2230026, at *1 n.1.[2]

---

[2] The applicable local rule provides:

A motion for summary judgment filed pursuant to [Fed. R. Civ. P. 56], shall be accompanied by a separate, short and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried.

The papers opposing a motion for summary judgment shall include a separate, short and concise statement of the material facts, responding to the numbered paragraphs set forth in the statement required in the foregoing paragraph, as to which it is contended that there exists a genuine issue to be tried.

Statements of material facts in support of, or in opposition to, a motion shall include references to the parts of the record that support the statements.

11

Remand is therefore appropriate. See Mancini v. Lester, 630 F.2d 990, 994, 996 (3d Cir. 1980) (where "factual record [was] sketchy," remanding to district court to "further develop the facts and apply to them the functional test of Imbler . . . ."); King v. Simpson, 189 F.3d 284, 288 (2d Cir. 1999) (in light of functional analysis required to "determine if the duties of the [parole commissioner defendant] were judicial or prosecutorial . . . or administrative," vacating dismissal of the complaint on absolute immunity grounds and remanding "the matter to the district court for additional development of the record in whatever form the court deems appropriate").

In light of the uncertain state of the record, the failure of the parties to agree as to uncontested facts and the failure of the District Court to make any determination as to which relevant facts are not in dispute, we cannot conclude which of Haws' actions are entitled to absolute immunity as a matter of law. We note, however, that Haws is entitled to a determination by the District Court as to which actions are entitled to absolute immunity. Once the District Court makes that determination it will be in the position to limit further proceedings accordingly.

---

> All material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.

M. D. Pa. L.R. 56.1.

12